No. 21-13116

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee*,

v.

SIMPLE HEALTH PLANS, LLC,

a Florida Limited Liability Company, *et al.*,

*Defendants*,

STEVEN J. DORFMAN, individually and as an officer, member or manager of Simple Health Plans LLC, Health Benefits One LLC, Health Center Management LLC, Innovative Customer Care LLC, Simple Insurance Leads LLC and Senior Benefits One LLC,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court for the Southern District of Florida, No. 18-CV-62593-DPG

_____

## OPENING BRIEF OF APPELLANT STEVEN J. DORFMAN
_____

Ryan D. O'Quinn
DLA Piper LLP (US)
200 South Biscayne Blvd., Ste. 2500
Miami, Florida 33131
(305) 423-8553

Rachel A.H. Horton
DLA Piper LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
(215) 656-3300

November 24, 2021

*Attorneys for Appellant
Steven J. Dorfman*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Circuit Rule 26.1-1, Appellant Steven Dorfman hereby certifies that the following is a full and complete list of the trial judges and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal:

1. Carver, Christopher, Counsel to Appellee-Receiver.

2. Davis, James, Counsel to Appellee.

3. DLA Piper LLP (US), Appellant's Counsel's law firm.

4. Dorfman, Steven, Appellant.

5. Federal Trade Commission, Appellee.

6. Gayles, Darrin, District Court Judge, U.S. District Court for the Southern District of Florida.

7. Girouard, Candida, Defendant.

8. Goldberg, Michael, Receiver.

9. Health Benefits One, LLC, dba Health Benefits Center, dba Simple Health, dba Simple Health Plans, dba Simple Insurance, dba Simple Insurance Plans, dba Simple Auto, dba Simple Home, dba Simple Home Plans, dba Simple Care, dba Simple Life, dba National Dental Savings, Defendant.

10. Health Center Management LLC, Defendant.

11. Hoffman, Matthew, Counsel to Appellee.

i

12. Horton, Rachel A.H., Counsel to Appellant.

13. Innovative Customer Care LLC, Defendant.

14. Mallonee, Brian, Counsel to Defendant Candida Girouard.

15. Murerjee, Purba, Counsel to Appellee.

16. O'Quinn, Ryan, Counsel to Appellant.

17. Schiltz, Matthew, Counsel to Appellee

18. Scott, Elizabeth, Counsel to Appellee.

19. Senior Benefits One LLC, Defendant.

20. Simple Health Plans, LLC, Defendant.

21. Simple Insurance Leads LLC, dba Health Insurance Services, Defendant.

22. Wei, Joannie, Counsel to Appellee.

## STATEMENT REGARDING ORAL ARGUMENT

Steven Dorfman respectfully requests oral argument.  *See* Fed. R. App. P. 34(a); 11th Cir. R. 28-1(c).  This appeal arises from the District Court's refusal to dissolve a preliminary injunction that has frozen and seized Mr. Dorfman's assets for more than three years.  Oral argument would assist the Court in understanding the complex statutory scheme at issue and would also permit the parties to address any questions the Court has about the factual and legal issues in this case.

## **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ........................................................... i

STATEMENT REGARDING ORAL ARGUMENT .............................................. iii

TABLE OF AUTHORITIES .................................................................... vi

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION..........................................................4

STATEMENT OF THE ISSUES..............................................................5

STATEMENT OF THE CASE .................................................................6

I.    FACTUAL BACKGROUND ........................................................6

I.    PROCEDURAL HISTORY ..........................................................9

    A.    The FTC Hastily Filed Suit Against Mr. Dorfman and His Companies and
        the District Court Froze and Seized His Personal and Corporate Assets
        Within Weeks. ..........................................................9

    B.    The FTC References Section 19 as an Additional Ground for Relief After
        Amending Its Complaint..........................................................11

    C.    The Eleventh Circuit Issues Its Opinions on Mr. Dorfman's Requested
        Dissolution of the Preliminary Injunction. ...............................12

    D.    Mr. Dorfman Sought to Dissolve the Preliminary Injunction After
        Significant Changes in Supreme Court and Eleventh Circuit Precedent. .13

STANDARD OF REVIEW .....................................................................15

SUMMARY OF THE ARGUMENT .....................................................15

ARGUMENT .....................................................................................18

I.    The FTC Lacked Any Statutory Authority to Engage in the Punitive Seizure of
    Assets and the District Court Erred by Refusing to Dissolve an Injunction That
    Has No Statutory Basis. ...............................................................18

A. On This Record, the FTC Does Not Have Statutory Authority to Seek Relief in District Court Without First Obtaining a Final Administrative Order. ..........................................................................................19

B. The FTC Does Not Have the Statutory Authority to Seek the Relief Requested in the Second Amended Complaint. ........................................21

  1. Congress's Enactment of Section 19 Authorized the FTC to Seek Limited Monetary Relief and Other Remedies to Redress Specific Consumer Injuries. ............................................................................21

  2. Section 19 Makes Clear That Defendants Are Required to Receive Notice. ..............................................................................................26

  3. Throughout the FTC Enforcement Action, the Corporate Defendants Have Been Deprived of Independently Appointed Counsel...............28

C. The Preliminary Injunction Is Not Supported by the TSR and the Supreme Court Expressly Concluded That Section 13(b) Does Not Authorize the FTC to Obtain Equitable Monetary Relief. ................................................30

  1. The District Court's Order Granting the Preliminary Injunction Was Premised on *U.S. Oil & Gas*, Which This Court Has Now Acknowledged Was Abrogated by *AMG Capital*...............................32

  2. The Disgorgement Sought by the FTC Is Penal and Punitive in Nature. ..............................................................................................34

II. The District Court Erred When It Found That the FTC Was Likely to Succeed Under the TSR..............................................................................................37

A. The District Court Erred Because There Is No Record Evidence That Mr. Dorfman or the Corporate Defendants Violated The TSR........................38

CONCLUSION ......................................................................................................39

CERTIFICATION OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Sandoval*,
　532 U.S. 275 (2001)...................................................................................24, 25

*AMG Cap. Mgmt., LLC v. F.T.C.*,
　141 S. Ct. 1341 (2021)..................................................................*passim*

*AT&T Broadband v. Tech Commc'ns, Inc.*,
　381 F.3d 1309 (11th Cir. 2004) ...........................................................15

*Bank of Am. Nat'l Ass'n v. Colonial Bank*,
　604 F.3d 1239 (11th Cir. 2010) ...........................................................15

*De Beers Consol. Mines v. United States*,
　325 U.S. 212 (1945)...............................................................................22

*F.T.C. v. Gem Merch. Corp.*,
　87 F.3d 466 (11th Cir. 1996) ........................................................11, 13

*F.T.C. v. On Point Cap. Partners LLC*,
　No. 20-10790, 2021 WL 5115204 (11th Cir. Nov. 4, 2021).....................1, 2, 33

*F.T.C. v. On Point Global*,
　No. 19-25046, 2020 WL 5819809 (S.D. Fla. Sept. 30. 2020).....................29, 30

*F.T.C. v. Pantron I Corp.*,
　33 F.3d 1088 (9th Cir. 1994) ...............................................................35

*F.T.C. v. Simple Health Plans, LLC*,
　792 F. App'x 761 (11th Cir. 2020)....................................................13, 34

*F.T.C. v. Simple Health Plans, LLC*,
　801 F. App'x 685 (11th Cir. 2020)....................................................13, 34

*F.T.C. v. U.S. Oil & Gas Corp.*,
　748 F.2d 1431 (11th Cir. 1984) ...............................................*passim*

vi

*Fed. Sav. & Loan Ins. Corp. v. Dixon*,
    835 F.2d 554 (5th Cir. 1987) ...............................................................................21

*In re Fredeman Litig.*,
    843 F.2d 821 (5th Cir. 1988) ......................................................................21, 22

*Kokesh v. S.E.C.*,
    137 S. Ct. 1635 (2017)........................................................................................37

*Liu v. S.E.C.*,
    140 S. Ct. 1936 (2020).........................................................................12, 34, 35

*Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*,
    573 F.3d 1124 (11th Cir. 2009) .........................................................................15

*Mitchell v. Robert DeMario Jewelry, Inc.*,
    361 U.S. 288 (1960).....................................................................................27, 31

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946)......................................................................................27, 31

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    140 S. Ct. 1492 (2020)........................................................................................24

*S.E.C. v. Graham*,
    823 F.3d 1357 (11th Cir. 2016) ...................................................................35, 36

*S.E.C. v. Torchia*,
    922 F.3d 1307 (11th Cir. 2019) .........................................................................29

*Saad v. S.E.C.*,
    873 F.3d 297 (D.C. Cir. 2017).........................................................................37

*Stansell v. Revolutionary Armed Forces of Colombia*,
    704 F.3d 910 (11th Cir. 2013) ...........................................................................15

*Tefel v. Reno*,
    180 F.3d 1286 (11th Cir. 1999) .........................................................................15

*United States v. Noriega*,
    746 F. Supp. 1541 (S.D. Fla. 1990).................................................................29

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)..................................................................21

**Statutes and Regulations**

15 U.S.C. § 45 ...................................................................*passim*

15 U.S.C. § 53 .............................................................................20

15 U.S.C. § 57b ................................................................*passim*

15 U.S.C. § 87 .............................................................................19

15 U.S.C. §§ 1011-15.....................................................................7

15 U.S.C. § 6102 ..................................................................19, 20

15 U.S.C. § 6107(a) ....................................................................20

15 U.S.C. § 53(b) ..............................................................*passim*

16 C.F.R. Part 310 ............................................................*passim*

**Other Authorities**

Isaac D. Buck, *Affording Obamacare*, 71 Hastings L.J. 261 (2020).......................7

Fed. Trade Comm'n, *Data on Refunds to Consumers* ...............................36

Fed. Trade Comm'n, *"Follow the Lead" Workshop*, STAFF
   PERSPECTIVE (Sept. 15, 2016)...............................................27

Fed. R. Civ. P. 55 .......................................................................28

Fed. R. Civ. P. 65 .......................................................15, 21, 22

Promoting Healthcare Choice and Competition Across the United
   States, Exec. Order No. 13813, 82 F.R. 48385 (2017)........................7

Stipulated Order For Permanent Injunction And Suspended Monetary
   Judgment with Ms. Girouard, D.E.449............................................36

U.S. Const. amend. V..................................................................2

U.S. Const. amend. VII...............................................................2

## **INTRODUCTION**

In 2019, the District Court granted a preliminary injunction that froze Appellant Steven Dorfman's assets and permanently appointed a receiver under Section 13(b) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 53(b). However, the Federal Trade Commission ("FTC") had no statutory authority under Section 13(b) to obtain these forms of punitive relief. The District Court, in turn, had no authority to award such long-lasting, punitive relief under Section 13(b). *See AMG Cap. Mgmt., LLC v. F.T.C.*, 141 S. Ct. 1341 (2021); *F.T.C. v. On Point Cap. Partners LLC*, — F.4th —, No. 20-10790, 2021 WL 5115204 (11th Cir. Nov. 4, 2021). Mr. Dorfman requests that this Court reaffirm the limited scope of relief available under Section 13(b), which merely permits the FTC to seek equitable, not punitive, relief. Section 13(b) does not authorize the FTC to seek (or the District Court to impose) the punitive forms of relief that the FTC obtained in the injunction order. 15 U.S.C. § 53(b).

In apparent recognition of the deficiencies in its original complaint, the FTC subsequently amended the complaint to cite Section 19, 15 U.S.C. § 57b. Section 19 permits punitive relief but only in narrow circumstances that are not applicable here: it allows courts to seize assets when those funds will go to specific victims. After amending the complaint to include a conclusory reference to Section 19, the FTC *never* moved for a new preliminary injunction. This spring, Mr. Dorfman filed

1

a motion to dissolve the injunction, which protested the FTC's ongoing failure to show entitlement to such broad injunctive relief. However, the District Court rubber-stamped the FTC's maneuvers by concluding that Mr. Dorfman has been on "notice" that the FTC was relying upon Section 19. But the court's order contained numerous reversible errors because the FTC never asked for—and the District Court never found—any facts that actually support the final relief sought under Section 19 and, as a basic matter, the FTC never moved for preliminary injunctive relief ancillary to the final relief sought in either of the two amended complaints.

The FTC routinely seeks punitive relief—mislabeled as "equitable" relief— through emergency actions that deprive defendants of constitutionally required notice and due process of law. *See* U.S. Const. amend. V; *see also* U.S. Const. amend. VII. In accordance with binding precedent, the preliminary injunction in this case must be vacated because this Court in *On Point Capital* expressly acknowledged the abrogation of *F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984), the central case relied on by the District Court. Mr. Dorfman's case is another in a long list of cases where the FTC was granted an improper injunction. *See AMG Cap.*, 141 S. Ct. at 1341; *On Point Cap.*, 2021 WL 5115204, at *1.

Compounding the unjust and unlawful effect of the improper preliminary injunction, the orders placing Mr. Dorfman's corporate property interests into a receivership deprived him of the legal authority and ability to object to that

2

receivership, meaning that the pretrial restraint on millions of dollars in property (a taking) could persist indefinitely without any forum to challenge that taking. *See* D.E.15, at 15-16; D.E.359. Mr. Dorfman was expressly deprived of the ability to retain counsel to represent the companies' interests throughout these proceedings. Mr. Dorfman thus challenges the *ex parte* receivership that deprived him of the ability to retain unconflicted counsel for the defendant corporate entities.

Mr. Dorfman's personally held property has also been improperly restricted since the FTC filed its original claims in October 2018. This Court should vacate the preliminary injunction order issued by the District Court because it imposes improper restraints on Mr. Dorfman's assets without due process, ancillary to penal and otherwise unavailable final relief, and without complying with the statutory process required by Congress.

## **STATEMENT OF JURISDICTION**

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Therefore, the District Court's subject matter jurisdiction depended on an unlawful judicial expansion of the limited equitable jurisdiction conferred on federal courts by Section 13(b) or Section 19.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292.  The District Court issued a temporary restraining order on October 31, 2018, which was extended by a preliminary injunction order on May 14, 2019.  Mr. Dorfman appeals the District Court's Order Denying Dorfman's Emergency Motion to Dissolve Preliminary Injunction issued on September 5, 2021.  D.E.446.

Mr. Dorfman timely filed a notice of appeal of the District Court's denial of the motion to dissolve the preliminary injunction.  D.E.453.

## <u>STATEMENT OF THE ISSUES</u>

1.      Whether the District Court lacked a statutory basis to impose the FTC's requested punitive remedies and, therefore, the District Court's refusal to dissolve or modify the preliminary injunction freezing Mr. Dorfman's assets after three years was reversible error where punitive remedies are not authorized by Section 13(b) or Section 19 under the circumstances of this case.

2.      Whether the District Court erred by finding that the FTC proved a likelihood of success on the merits under the Telemarketing Sales Rule, 16 C.F.R. § 310, thus permitting the FTC to seek asset seizure under Section 13(b) and Section 19, where the Defendants did not initiate calls to consumers.

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND

Mr. Dorfman and certain (but not all)[1] of the Corporate Defendants acted as brokers for third-party insurance products marketed to consumers who could not afford (or otherwise desired not to pay expensive premiums for) comprehensive healthcare plans.  Most of the insurance products at issue in the case were limited indemnity benefit plans,[2] short-term medical plans and various ancillary products packaged and sold by an independently operated, publicly traded third-party administrator ("TPA") named Health Insurance Innovations, Inc. ("HII").  As a TPA, HII functioned as a contracting middleman between health insurers and the end consumers. Importantly, the insurance contracts at issue in this case were executed between HII (or in some cases another administrator) and consumers, neither of which are parties to this action seeking contractual "rescission."  Instead,

---

[1] For instance, Health Benefits One LLC was a licensed insurance agency that operated under the registered dba "Simple Health" or "Simple Health Plans."  On the other hand, Simple Insurance Leads LLC was an online marketing company that published general advertisements on the internet and aggregated "leads" generated by other online marketing companies that published general advertisements on the internet.  Simple Health Plans LLC was an inactive Florida limited liability company that never had any business operations, financial accounts, or employees. Nevertheless, the FTC's complaint failed to differentiate between the various defendants.

[2] Limited-benefit plans are medical plans with much lower and more restricted benefits than major medical insurance, but with lower premiums.

6

the defendants in this matter were compensated by the administrators, largely through commissions. *See* D.E.375-5, ¶ 11. HII found a market for these insurance products when a large group of underserved Americans were negatively impacted by the Patient Protection and Affordable Care Act ("ACA"). The ACA's requirement that all individuals must acquire health insurance policies that provide "minimum essential coverage" has rendered comprehensive health plans unattainable for many Americans. Isaac D. Buck, *Affording Obamacare*, 71 Hastings L.J. 261, 277 (2020). Accordingly, a growing market of consumers sought access to more affordable healthcare options, such as: (i) short-term limited duration insurance plans; (ii) limited medical indemnity insurance policies (which do not include minimum essential coverage); and (iii) medical discount programs. *See* Promoting Healthcare Choice and Competition Across the United States, Exec. Order No. 13813, 82 F.R. 48385 (2017).

Prior to the instigation of this action, sharp political divisions developed around the implementation of the ACA. Despite the jurisdictional limitations set forth in the McCarran-Ferguson Act, the FTC made the paternalistic judgment that limited benefit plans are not a good product for consumers. *See* 15 U.S.C. §§ 1011-15. Thereafter, the FTC undertook a covert investigation of a small number of insurance policies marketing by Health Benefits One LLC ("HBO") and Senior Benefits One LLC ("SBO").

Mr. Dorfman began working in the health insurance industry in approximately 2008.  D.E.104-1, ¶ 39.  After the ACA-induced healthcare crisis emerged, he marketed, advertised, and brokered products that included these more affordable policies and programs to consumers who were unable to afford qualifying ACA health plans.  D.E.104-1, ¶ 7.  Mr. Dorfman and the Corporate Defendants did not create any of the health insurance plans or products at issue in this case.  D.E.104-1, ¶ 53.  Instead, Mr. Dorfman and some of the Corporate Defendants marketed or brokered health insurance plans and products primarily created by HII or another TPA.  D.E.104-1, ¶ 53.  The Defendants derived income from commissions paid by HII or other business operations, such as the sale of leads generated through internet advertising.  D.E.139, at 11.

HBO and SBO were state-licensed insurance agencies that marketed insurance products through a careful process regulated by various state agencies. HBO and SBO, in turn, contracted with lead generation companies to obtain leads for consumers looking for health insurance options.  D.E.104-1, ¶ 54.  In all instances, interested consumers initiated the commercial relationship with the Corporate Defendants by providing information, including their contact information, to a lead generator website.  D.E.104-1, ¶¶ 37, 55.  The lead generation companies forwarded the consumers' solicitations to HBO or SBO as leads.  D.E.104-1, ¶ 37. Importantly, neither Mr. Dorfman nor any of the Corporate Defendants ever took the

8

first step to initiate contact with a consumer to sell the insurance products at issue. D.E.139, at 6. Only after HBO or SBO received a lead from the lead generator would a licensed agent contact the consumer to sell an insurance product.

Mr. Dorfman's companies sold hundreds of thousands of insurance plans and other products to consumers in need to manage the risk of healthcare costs, but who were unable to afford expensive comprehensive health coverage plans or ACA qualifying plans. Many consumers remained with the monthly plans they purchased long after this case was filed, even after receiving a Court-endorsed letter from the FTC explaining the FTC's allegations and providing an opportunity to terminate their plan and purchase a comprehensive health plan. Of the tens of thousands of consumers that received that letter, an overwhelming majority elected to renew the monthly plans purchased from the defendants after receiving that additional disclosure. D.E.375-5, at ¶¶ 8-10.

## I.    PROCEDURAL HISTORY

### A.    The FTC Hastily Filed Suit Against Mr. Dorfman and His Companies and the District Court Froze and Seized His Personal and Corporate Assets Within Weeks.

On October 29, 2018, the FTC sued Mr. Dorfman and six companies, alleging that the Defendants had engaged in unfair and deceptive trade practices in violation of Section 5 of the FTCA. D.E.1, ¶¶ 55-59. The FTC further alleged that the Defendants violated the Telemarketing Sales Rule ("TSR") by advertising,

9

telemarketing, and promoting limited benefit plans and medical discount memberships as comprehensive health insurance. D.E.1, ¶¶ 60-65 (citing 16 C.F.R. § 310.3(a)(2)(iii), (a)(2)(vii), (a)(4)). In its initial complaint, the FTC's prayer for final relief sought a permanent injunction, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of alleged ill-gotten monies, and unspecified "other" equitable relief, as well as preliminary injunctive relief ancillary to that final relief. D.E.1, ¶ 69.

In conjunction with the Complaint, the FTC filed an Emergency *Ex Parte* Motion for a Temporary Restraining Order ("TRO"). D.E.3. On October 31, 2018, the District Court granted in full the relief requested, entering the *ex parte* TRO seizing Mr. Dorfman's personal assets and imposing a receivership over the Corporate Defendants (the "Receivership"). D.E.15, at 6-8, 13-19. In its *ex parte* order, the District Court ordered the Defendants to appear in court to show cause why a preliminary injunction should not be entered extending the TRO, while depriving Mr. Dorfman of all financial resources and expressly restricting his authority to engage counsel to represent his corporate interests. *Id.* The *ex parte* order seized all of Mr. Dorfman's individually held assets and his derivative property interest in the assets held by the Corporate Defendants. *See id.* at 20. Those property seizures remain in effect, and the District Court's *ex parte* restraints on the Corporate

Defendants prevented any defense or judicial review of the Receivership.[3]

More than six months after the *ex parte* TRO, on May 14, 2019, the District Court issued a preliminary injunction extending the pre-judgment restraints on Mr. Dorfman's assets and the Receivership through resolution of the FTC's claims. D.E.139.  That order exclusively cites Section 13(b) as the authorized statute for the preliminary injunction and cited now-abrogated Eleventh Circuit caselaw.  *Id.* (relying on *F.T.C. v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996), and *F.T.C. v. U.S. Oil & Gas Corp*, 748 F.2d 1431 (11th Cir. 1984)).  The District Court determined that the FTC was likely to succeed on the merits of its claims under Section 5(a) of the FTCA, 15 U.S.C. § 45(a), and the TSR, entitling the FTC to equitable monetary relief pursuant to Section 13(b).  *Id.* (citing 16 C.F.R. Part 310).

### B.    The FTC References Section 19 as an Additional Ground for Relief After Amending Its Complaint.

On November 1, 2019, the FTC filed an amended complaint, adding Defendant Candida L. Girouard and, for the first time, referencing Section 19 as an additional ground for final relief.  D.E.231.  Mr. Dorfman and Ms. Girouard moved to dismiss the Amended Complaint, D.E.252, and the District Court granted the

---

[3] Mr. Dorfman objected repeatedly to the District Court's orders that prolonged the TRO's effect because the FTC lacked the authority to seek disgorgement or restitution under Section 13(b).  D.E.60; D.E.79.  This Court dismissed an appeal by Mr. Dorfman without addressing its merits, citing lack of jurisdiction.  *See* Opinion, *F.T.C. v. Dorfman*, No. 19-10840 (11th Cir. Apr. 16, 2019).

motion in part because the FTC failed to adequately allege how the individual defendants participated in the alleged fraud.  D.E.287.

Then the FTC filed a Second Amended Complaint.  D.E.289.  The FTC again alleged violations of Section 5(a) and the TSR, and sought injunctive relief, recission or reformation of contracts, restitution, the refund of monies paid, disgorgement, and other equitable relief, under both Section 13(b) and Section 19.  *Id.*  Importantly, the FTC's prayer for relief sought receipts-based monetary relief jointly against all the defendants, citing only Section 13(b).  D.E.289, ¶ 16.  The District Court denied the motion to dismiss the Second Amended Complaint.  D.E.338.

On September 8, 2021, Ms. Girouard stipulated to the entry of a final judgment.  D.E.450.  With her consent, the District Court entered a final judgment against Ms. Girouard in the amount of $195,466,443, the full monetary sum sought by the FTC as "equitable" monetary relief in this case.[4]  D.E.450.  Therefore, through Ms. Girourad's final judgment, the FTC has already recovered any properly stated claim to *equitable* monetary relief asserted in the Second Amended Complaint.  *Id*.

## C.    The Eleventh Circuit Issues Its Opinions on Mr. Dorfman's Requested Dissolution of the Preliminary Injunction.

Mr. Dorfman appealed the propriety of the preliminary injunction.  On

---

[4] The District Court's judgment against Ms. Girouard, thus, runs afoul of the principle that courts will award profits-based remedies against individuals, but will not do so where there are multiple wrongdoers under a joint-and-several liability theory.  *See Liu v. S.E.C.*, 140 S. Ct. 1936 (2020).

February 5, 2020, this Court affirmed the District Court's May 14, 2019 order granting the preliminary injunction, the asset freeze, and the receivership. *F.T.C. v. Simple Health Plans, LLC*, 801 F. App'x 685 (11th Cir. 2020). Under the prior panel precedent rule, the Court held that it was bound by the Court's decisions in *F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984), and *F.T.C. v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996). *See Simple Health Plans*, 801 F. App'x at 688. The same day, the Court affirmed the District Court's July 10, 2019 order denying Mr. Dorfman's motion to dissolve the preliminary injunction. *F.T.C. v. Simple Health Plans, LLC*, 792 F. App'x 761 (11th Cir. 2020). The Court found that no substantial questions existed because *U.S. Oil & Gas* remained good law. *Id.*

## D. Mr. Dorfman Sought to Dissolve the Preliminary Injunction After Significant Changes in Supreme Court and Eleventh Circuit Precedent.

After this Court's February 2020 decisions, there was a considerable change in the law that directly impacts the District Court's prior orders and findings, as well as this Court's prior opinions in this matter. In April 2021, the Supreme Court decided *AMG Capital*, 141 S. Ct. at 1347-49. In that case, the Court analyzed the statutory language of Section 13(b) and determined that this section does not authorize the FTC to seek, or a court to award, equitable monetary relief, such as restitution or disgorgement. *Id.*

13

In light of the Supreme Court's decision in *AMG Capital*, Mr. Dorfman filed an Emergency Motion to Dissolve the preliminary injunction on April 22, 2021. D.E.418.    On September 5, 2021, the District Court denied Mr. Dorfman's emergency motion.    D.E.446.    The District Court found that, although the FTC amended its complaint to include Section 19, it alleged violations of Section 5 and the TSR in the original complaint.    *Id.* at 5.    Thus, the court found that it was unnecessary for the FTC to file a renewed motion for preliminary injunction "as nothing will change."    *Id.* at 7-8.    The court also found that the FTC still showed a likelihood of success on the merits.    *Id.* at 2, 8.    The District Court's findings were deficient for the following reasons.    First, neither Section 13(b) nor Section 19 allow the FTC to obtain the specific relief it has preliminarily received in this case. Second, the FTC amended its complaint to include Section 19 as a basis for relief *after* the District Court already granted the injunction.    Thus, the District Court made insufficient factual findings in support of its conclusion that the FTC established a likelihood of success on the merits of the TSR claim.    Third, the FTC's actions in this case violated Mr. Dorfman's and the Corporate Defendants' due process rights.

This appeal followed.    D.E.453.

14

## STANDARD OF REVIEW

This Court reviews legal questions *de novo*, "including the interpretation of federal statutes," and the legal grounds upon which the District Court relied when freezing Mr. Dorfman's assets and permanently appointing the receiver. *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 914 (11th Cir. 2013); *Bank of Am. Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239, 1242-43 (11th Cir. 2010); *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1315 (11th Cir. 2004). A district court's factual findings are reviewed for clear error, *Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1128 (11th Cir. 2009), and the denial of a motion to dissolve a preliminary injunction is reviewed for an abuse of discretion, *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999).

## SUMMARY OF THE ARGUMENT

The FTC exceeded its statutory authority when it engaged in the punitive seizure of Mr. Dorfman's assets via the preliminary injunction. As such, the District Court erred by refusing to dissolve the injunction.

As an initial matter, the injunction is unsupported by the statutes that govern the FTC's authority. Section 13(b) and Section 19 limit the injunctive remedies that the FTC may request and the District Court may grant. Rule 65 cannot be used to circumvent or exceed these limitations. As made clear in *AMG Capital* and *On Point Capital*, the preliminary relief ordered by the District Court exceeded the limited

injunctive relief authorized by Section 13(b). Additionally, the various forms of preliminary and final relief sought by the FTC are penalties that exceed the bounds of equity. Each form of final relief sought by the FTC seeks to punish Mr. Dorfman, rather than being limited to restorative action. As such, both the economic and non-economic final relief the FTC seeks exceed the statutory authority in Section 13(b) and Section 19. Under these circumstances, it was error for the District Court to freeze millions of dollars in assets for the pendency of litigation. The notice, process, and administrative provisions that cabin the FTC's authority were erroneously cast aside in this case.

In addition, the Receivership has deprived Mr. Dorfman of the authority to retain non-conflicted counsel for the Corporate Defendants. Although the Receiver is exclusively responsible for choosing and employing attorneys to represent the Corporate Defendants, per the Receivership Order, independent counsel has not been retained to defend the interests of the Corporate Defendants. Rather than defending the corporations, the Receiver asserted no affirmative defenses and has even opposed Mr. Dorfman's motions seeking relief from the draconian orders that freeze corporate and personal assets. Accordingly, the Corporate Defendants and, by extension Mr. Dorfman, were deprived of their due process rights. The corporate Defendants here never received notice or the opportunity to be heard on the FTC's request to freeze these assets.

16

What's more, the FTC is not permitted to seek joint-and-several relief among the defendants. Ms. Girouard's final judgment included a recovery for the full amount of money the FTC seeks to recover from Mr. Dorfman as purportedly equitable monetary relief. In this situation, the FTC is not permitted to recover profits-based remedies from the Defendants under a joint-and-several liability theory. Pursuant to Supreme Court precedent, such a recovery was permitted where the wrongdoers were "partners" but in this action there are no facts in the record that establish she was Mr. Dorfman's partner.

Now that the FTC has been precluded from seeking relief under Section 13, the FTC must prove a violation of a rule promulgated under Subchapter I of Title 15. It has not done so. The TSR was not promulgated under Subchapter I. And, even setting that fatal flaw aside, the District Court made insufficient findings to support its conclusion that the FTC had a likelihood of success on its TSR claim. To make such a determination, the District Court had to find that the defendants "initiated" outbound calls. Here, the facts in the record establish the opposite because neither Mr. Dorfman nor any of the Corporate Defendants initiated "outbound" calls to any consumers.

17

# ARGUMENT

## I.     The FTC Lacked Any Statutory Authority to Engage in the Punitive Seizure of Assets and the District Court Erred by Refusing to Dissolve an Injunction That Has No Statutory Basis.

The *plain text* of Section 13(b) refers only to injunctions.     Neither disgorgement, restitution, nor an asset freeze can be accomplished under the rubric of an injunction.  The FTCA's statutory scheme demonstrates that Congress intended to offer broader forms of equitable relief, not under Section 13(b), but under Section 19.  Section 19 offers more procedural protections to defendants but also permits certain specified penalties, which are enumerated in 15 U.S.C. § 45.  Importantly, those remedies do not include the forms of relief requested in the Second Amended Complaint.

The legislative and litigation history underscores that the purpose of Section 13(b) and 19 was to protect consumers during litigation, not to deliver a premature victory to the FTC by denying the defendant its due process rights.  The bottom line is Section 13(b) does not, and was never meant to, justify the remedies of restitution and disgorgement that the FTC now routinely obtains in its name.  Further, the limited forms of equitable relief available under Section 19 do not confer an alternative route to obtain ancillary preliminary injunctive relief that avoids the statutory process provided in Section 13(b). Either way, the FTC's prayer for

monetary penalties that exceed the bounds of equity preclude the use of ancillary preliminary measures to equitably restrain the defendants' assets prejudgment.

**A.    On This Record, the FTC Does Not Have Statutory Authority to Seek Relief in District Court Without First Obtaining a Final Administrative Order.**

Any action brought under Section 19 requires adequate pre-suit notice to the defendant, either through the filing of an administrative action or through the rule making process.  15 U.S.C. § 57b.  The FTC took neither action here, and Defendants did not receive fair notice that the FTC would attempt to use the TSR in the way it has here.  The FTC was first required to file an administrative action and obtain a cease-and-desist letter before it could seek either equitable or penal relief from the District Court for a violation of the TSR.

Section 19 is limited to violations of rules promulgates "under this Subchapter"—that is, Title 15, Chapter 2, Subchapter I of the United States Code. However, the FTC's complaint alleges violations of rules and regulations that *were not* promulgated under Title 15, Chapter 2, Subchapter I of the United States Code. The TSR, 16 C.F.R. Part 310, was promulgated by the FTC in 1995 pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), codified at 15 U.S.C. § 87.  The Telemarketing Act directed the FTC to prescribe rules and regulations prohibiting deceptive and abusive telemarketing acts and practices. *Id.*; *see also* 15 U.S.C. § 6102(b).  The FTC has statutory authority to

enforce violations of 16 C.F.R. Part 310, and in many instances the final relief available to the FTC is identical to that authorized for violations of rules promulgated under 15 U.S.C. § 57b(a). *See* 15 U.S.C. § 6102(c)(1).

Notwithstanding the fact that the FTC is empowered to seek identical relief for violations of 16 C.F.R. Part 310, the TSR is not a "rule under this subchapter," as that term is used in Section 19(a)(1). *See* 15 U.S.C. § 6102(c)(1). Therefore, the statutory authority to commence a direct civil action for a violation of 16 C.F.R. Part 310 alone must be limited to a prospective injunctive action under Section 13(b). *See* 15 U.S.C. § 6107(a). Furthermore, a district court's authority to issue preliminary injunctive relief is limited in duration to 20 days, unless an administrative action is filed, and requires notice to the defendant allowing a meaningful opportunity to be heard. 15 U.S.C. § 53. To seek monetary relief or a penalty for a violation of 16 C.F.R. Part 310, the FTC must file an administrative complaint and obtain a final cease and desist order. 15 U.S.C. § 57b(a)(2). Consistent with the Supreme Court's clear directives in *AMG Capital*, this Court should reject the FTC's latest attempt to circumvent Congressional intent by obtaining broad preliminary injunctive relief, without notice, unlimited in duration, and devoid of the protections afforded by the administrative process.

**B.**    **The FTC Does Not Have the Statutory Authority to Seek the Relief Requested in the Second Amended Complaint.**

**1.**    **Congress's Enactment of Section 19 Authorized the FTC to Seek Limited Monetary Relief and Other Remedies to Redress Specific Consumer Injuries.**

The FTC seeks final relief pursuant to Section 19, 15 U.S.C. § 57b.  D.E.289 ¶¶ 1, 72-73.  If the FTC were seeking equitable final relief, it would be able to request equitable preliminary relief ancillary to that final relief.  *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir. 1988) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945), for the "general federal rule of equity" that "a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment"); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 560 (5th Cir. 1987) (citing *De Beers* for the "general rule" that "such an injunction is not permissible to secure post-judgment legal relief in the form of damages").  If the form of monetary damages is determined to be equitable in nature, the FTC's failure to provide notice and an opportunity to be heard at both injunctive proceedings failed to meet the statutory procedure set forth in Section 13(b).

The FTC could, in theory, look to Federal Rule of Civil Procedure 65 if it were seeking equitable relief and its authority were not cabined by statute.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982).  But that is not the situation here.  Since Congress has set forth a procedure for injunctive relief in

Section 13(b), that section provides the exclusive process by which the FTC may seek preliminary injunctive relief, and the FTC may not proceed pursuant to the general procedures set forth in Rule 65. *See AMG Cap.*, 141 S. Ct. at 1347-50. If the rule were any different, the Supreme Court would have said so in *AMG Capital*. Further, if the final relief sought exceeds the bounds of equity, there is no preliminary relief available because the FTC cannot seek equitable preliminary relief ancillary to penal final relief. *See In re Fredeman Litig.*, 843 F.2d at 824; *see also De Beers*, 325 U.S. at 219-20.

An historical account of Congress's authorization of FTC enforcement actions is informative of the remedies Congress authorized the FTC to seek in such actions. Starting in 1938, Congress acted to provide the FTC with specific enforcement authority by enacting Section 13(a). At that time, the FTC's enforcement authority under Section 13(a) was strictly limited to "temporary injunction[s]" and "restraining order[s]." *See* Br. for Pet'rs, *AMG Cap. Mgmt.*, 2020 WL 5846149, at *6 (filed Sept. 25, 2020). In 1973, Congress extended the FTC's enforcement authority, adding Section 13(b) to authorize limited-duration preliminary injunctions, pending instigation of administrative proceedings and upon satisfaction of specified conditions, *including prior notice to the defendant*. 15 U.S.C. § 53(b). The newly-added statutory provision clarified that, notwithstanding the immediately

preceding limitation on the FTC's authority to seek a temporary restraining order or preliminary injunction, the FTC could still seek a permanent injunction. *Id.*

Two years after enacting Section 13(b), Congress amended Section 19 to authorize the FTC to seek limited equitable monetary relief to specifically redress an identified consumer's injury. 15 U.S.C. § 57b. This addition allowed the FTC to seek relief in the event of (i) a violation of a rule promulgated under 15 U.S.C. Subchapter I; or (ii) violation of a previously issued cease and desist order where the FTC can prove that a "reasonable man would have known under the circumstances" that the conduct was dishonest or fraudulent. 15 U.S.C. § 57b(a)(1)-(2). This 1975 amendment added the specific provision of Section 19 that the FTC now seeks to invoke.

Contemporaneous with the 1975 amendments to Section 19, Congress amended the penalties provisions of the FTCA by adding Section 5(m). 15 U.S.C. § 45(m). By enacting Section 5(m), Congress authorized the FTC to "commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule *under this subchapter* respecting unfair or deceptive acts or practices . . . with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." *See* 15 U.S.C. § 45(m)(1)(A) (emphasis added). Violators may be sanctioned with a civil penalty of not more than

23

$10,000 for each violation. Once again, the sanction was restricted to circumstances where the person acted with "actual knowledge" that the violative act was both "unfair or deceptive" and prohibited by the FTC. 15 U.S.C. § 45(m)(1)(A), (B).

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create" a particular remedy—not to assume that judges may employ any remedy not expressly foreclosed." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). Courts "usually" should not "read into statutes words that aren't there." *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495 (2020). "It's a temptation" that courts are "doubly careful to avoid when Congress has (as here) included the term in question elsewhere in the very same statut[e]." *Id.*

In this case, even if the FTC were to substantiate a direct action in district court, Section 19 does not independently authorize preliminary injunctive relief. The omission of a preliminary injunction provision in Section 19 is particularly notable, given that the primary purpose Congress passed Section 13 was to articulate express limitations on the FTC's authority to utilize those drastic measures. Furthermore, the express authorization of "mandatory injunctions and such other and further equitable relief" in Section 5(l) reinforces the FTC's limited authority to seek injunctions, like an asset freeze or receivership. Section 5(l) expressly limits such mandatory injunctions to "the enforcement of . . . final orders of the Commission,"

24

15 U.S.C. § 45(l), and does not offer an exception for violations of a rule.  *See Alexander*, 532 U.S. at 286-87.

Even if Section 19 authorized the relief sought by the FTC, the clear language contained within the statute underscores that the purpose and nature of the relief available under Section 19 is for consumer redress:

> The court in an action under subsection (a) shall have jurisdiction to *grant such relief as the court finds necessary to redress injury to consumers* or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be.  Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that *nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages*.

15 U.S.C. § 57b(b) (emphasis added).  This limited relief provided by the statute is unavailable to the FTC for the following reasons.  For rescission or the reformation of contracts, the record evidence shows that non-party HII entered into contracts with the consumers, not the defendants.  D.E.104-1, ¶ 53.  Nor can the defendants refund any money to consumers, as all monies made from the sale of the insurance plans paid directly to HII.  D.E.139, at 11.  Moreover, nothing in Section 19 "is intended to authorize the imposition of any exemplary or punitive damages."  15 U.S.C. § 57b(b).  Here, enforcing an award for recission against Mr. Dorfman and

the corporate defendants equates to a punishment, as it would require defendants to pay for a recission award, rather than HII, the entity that entered into contracts with the consumers.  D.E.104-1, ¶53.

Finally, any relief permitted under this section is unavailable to the FTC because the frozen funds (and, thus, the funds the FTC ultimately collects) are not being set aside for specific consumers.  Rather, the funds are deposited into a fund administered by the FTC, and any money that is not used for such equitable relief is to be deposited into the U.S. Treasury as disgorgement. *See* D.E.449, at 13-14. Accordingly, the FTC's requested relief is unavailable under Section 19, and the preliminary injunction cannot stand.

### 2.    Section 19 Makes Clear That Defendants Are Required to Receive Notice.

The Supreme Court's careful analysis of the FTC's enforcement program in *AMG Capital* addresses the complex statutory framework that governs FTC actions. Now binding precedent, *AMG Capital* compels the conclusion that, any action brought under Section 19 requires adequate pre-suit notice to the defendant, either through the filing of an administrative action or through the rule making process.[5] 15 U.S.C. § 57b.

---

[5] The FTC has absolutely failed to give Defendants any notice at all of the FTC's new and novel view of the TSR.  This is particularly true as the FTC's public review

*…Continued*

The most clear and pervasive mandate evident throughout the Supreme Court's comprehensive description of the statutory framework governing FTC actions is a Congressional preference for an administrative process, with adequate notice to defendants and due process of law. *See AMG Cap.*, 141 S. Ct. at 1348-50. Even where the FTC was authorized to seek direct relief in a district court under Section 19, the Court should not misapply *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), and *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960) (or their now-discredited progeny) as a basis to impose mandatory asset freezes and receivership orders that restrict an individual citizens' ability to challenge the FTC's actions and deprives Corporate Defendants of any form of due process or appellate review.

The present matter demonstrates the importance of the notice requirement under this statutory scheme. The FTC filed the original complaint on October 29, 2018. D.E.1. The District Court granted the *ex parte* TRO, which permitted the FTC to immediately freeze and seize Mr. Dorfman's personal and corporate assets (without him first having an opportunity to be heard), immediately thereafter on October 31, 2018. D.E.3. The FTC served him with the complaint on November 1,

---

of and Staff Report regarding Internet-based lead generation contained no reference to the TSR. Fed. Trade Comm'n, *"Follow the Lead" Workshop*, STAFF PERSPECTIVE (Sept. 15, 2016), https://www.ftc.gov/system/files/documents/reports/staff-perspective-follow-lead/staff_perspective_follow_the_lead_workshop.pdf.

2018, after the *ex parte* TRO was already granted.  D.E.32.  Thus, Mr. Dorfman did not receive proper notice of the FTC's action against him until after his assets were already frozen and seized, running afoul of the notice requirements prescribed in both Section 13(b) and 19.  The trial court's post hoc justification fails.

### 3.  Throughout the FTC Enforcement Action, the Corporate Defendants Have Been Deprived of Independently Appointed Counsel.

The FTC's actions in this case have also unlawfully deprived the Corporate Defendants of counsel to defend them in this suit.  While Mr. Dorfman is represented, the Corporate Defendants have never been represented by counsel.  As a consequence of the Receivership, Mr. Dorfman was unable to seek and retain counsel for the Corporate Defendants.  D.E.15, at 13-19.  Instead, the Receivership Order expressly states that the Receiver is exclusively responsible for, among other things, choosing and employing attorneys to represent the Corporate Defendants.  D.E.15, at 16.  As noted by the FTC, although Mr. Dorfman has defended against the claims "[n]one of the Corporate Defendants has appeared in this matter and none has filed a pleading responsive to the FTC's Second Amended Complaint."  D.E.363, at 2.  Consequently, the FTC requested that the clerk enter default as to the Corporate Defendants, D.E.357, and argued to the District Court that "[g]iven the circumstances, the entry of default was not only entirely predictable and appropriate, but prescribed by Rule 55(a)."  D.E.363, at 2.  Because the Corporate Defendants

remain unrepresented, Mr. Dorfman was deprived of an opportunity to assert defenses and preserve issues for appeal. Only after a motion to compel action by the Receiver did the District Court set aside the clerk's default and order the Receiver to answer the Second Amended Complaint.  Still, the resulting answer raised no affirmative defenses and failed to join in the procedural defenses identified by Mr. Dorfman.

In its most basic form, due process requires notice and an opportunity to be heard.  Yet, in this matter, the Corporate Defendants were denied due process because the District Court's imposition of a Receivership deprived Mr. Dorfman from retaining counsel for the corporate entities and deprived the Corporate Defendants of a meaningful opportunity to present its claims and defenses.  *S.E.C. v. Torchia*, 922 F.3d 1307, 1316-17 (11th Cir. 2019).  Mr. Dorfman, as a substantial equity owner of the Corporate Defendants, holds a derivative interest in property held by the corporations.  D.E.104-1, ¶ 41.  As such, Mr. Dorfman holds a cognizable interest in the corporate property seized by the FTC.  *Cf. United States v. Noriega*, 746 F. Supp. 1541, 1543 (S.D. Fla. 1990), *aff'd*, 117 F.3d 1206 (11th Cir. 1997) ("[D]ue process traditionally requires that a defendant not be deprived of his property without adequate notice and opportunity for a hearing.").

Furthermore, the Receiver owes a fiduciary duty to the Corporate Defendants and is obligated to work to preserve their assets.  *F.T.C. v. On Point Global*, No. 19-

29

25046, 2020 WL 5819809, at *2 (S.D. Fla. Sept. 30. 2020) (A "receiver owes a fiduciary duty to the owners of the property under his care and thus must protect and preserve the receivership's assets for the benefit of the person ultimately entitled to it." (internal quotation marks omitted)).  Additionally, a receiver should act to "tak[e] actions to preserve arguments" for the Corporate Defendants. *Id.* at *6 ("If the Receiver had failed to adopt these arguments on behalf of the Corporate Entity Defendants these Defendants would have been prejudiced by being deprived of an argument to potentially preserve their property.  Indeed, the Receiver represents *both* the interests of the Defendants she represents and consumers.").  A receiver's failure to "preserve a colorable argument for the Defendants she represents" shows bias against those defendants by prejudicing them in favor of consumers. *Id.*  The District Court's issuance of the TRO deprived the Corporate Defendants of any notice or opportunity to be heard and violates the Corporate Defendants' due process rights.  Accordingly, the preliminary relief granted by the District Court should be dissolved.

### C.  The Preliminary Injunction Is Not Supported by the TSR and the Supreme Court Expressly Concluded That Section 13(b) Does Not Authorize the FTC to Obtain Equitable Monetary Relief.

The District Court's preliminary orders imposed harsh prejudgment restraints on individual and corporate assets as ancillary relief "inherently" authorized by the FTC's claim for final monetary relief.  Yet, the final monetary relief sought in the

FTC's complaint (and relied on by the Court as the basis for its "inherent" authority to issue prejudgment restraints) was not expressly authorized by Section 13(b). Instead, the FTC argued (and the District Court acquiesced) that *Porter* and *Mitchell* supported another separate "inherent" authority for the FTC to seek and for this Court to grant a money judgement. The false premise rested entirely on a strained reading of the "second proviso" of Section 13(b), which saved the FTC's authority to seek a permanent injunction. Notwithstanding the limitations on the FTC's authority to seek a temporary restraining order or preliminary injunction expressed earlier in that same sentence, the FTC argued that the authority to seek a permanent injunction "inherently" authorized monetary damages. *See U.S. Oil & Gas Corp.*, 748 F.2d at 1432.

By unanimous decision in *AMG Capital*, the Supreme Court rejected *U.S. Oil & Gas Corp.'s* application of *Porter* and *Mitchell*, holding that "Section 13(b) [of the FTCA does not authorize the [FTC] to seek, or a court to award, equitable monetary relief such as restitution or disgorgement." *AMG Cap.*, 141 S. Ct. at 1343. Therefore, the FTC's complaint instigating this action and the District Court's preliminary orders ancillary to the relief claimed in that complaint were (and are still) unsupported by applicable law. Following *AMG Capital*, the District Court lacked the statutory authority to grant the form of preliminary mandatory relief required for an asset freeze and a receivership.

31

Importantly, nothing in Section 19 supports the issuance of injunctive relief. Furthermore, nothing within the authorized penalties or other authorized remedies for a violation of 16 C.F.R. Part 310 expressly authorizes the FTC to seek (or for the District Court to issue) a temporary restraining order or preliminary injunction. Because a violation of 16 C.F.R. Part 310 alone does not authorize the FTC to seek, or the District Court to grant, an individual asset freeze or a corporate receivership, the District Court erred when it denied Mr. Dorfman's Motion to Dissolve the Preliminary Injunction.

> **1.    The District Court's Order Granting the Preliminary Injunction Was Premised on *U.S. Oil & Gas*, Which This Court Has Now Acknowledged Was Abrogated by *AMG Capital*.**

The District Court's order denying Mr. Dorfman's requests to dissolve the injunction, as well as this Court's prior decisions affirming the entry of the preliminary injunction pursuant to *U.S. Oil & Gas*, can no longer stand.  Prior to this Court's decision in *On Point Capital*, Eleventh Circuit precedent permitted district courts to implement certain measures, such as asset freezes, in preliminary injunctions to preserve resources for a future judgment.  *U.S. Oil & Gas Corp.*, 748 F.2d at 1434.  As established by the Supreme Court in *AMG Capital*, however, Section 13(b) does not allow district courts to grant "equitable monetary relief such as restitution or disgorgement."  *AMG Cap.*, 141 S. Ct. at 1344.  Therefore, as recognized in *On Point Capital*, "the imposition of an asset freeze or receivership

premised solely on § 53(b) is inappropriate." *On Point Capital*, 2021 WL 5115204, at *7. Under this precedent, the District Court exceeded the limited injunctive relief authorized by Section 13(b) by granting a preliminary injunction that permitted an award of equitable monetary relief (*i.e.*, disgorgement) as well as imposed both an asset freeze and receivership.

In *On Point Capital*, the FTC filed suit under Section 13(b) and brought a motion for a temporary restraining order that same day. *Id.* at *5. The district court granted the temporary restraining order pursuant to *U.S. Oil & Gas Corp.*, froze the defendants' assets, and placed the On Point corporate entities into a receivership. *Id.* The district court subsequently granted the preliminary injunction, which extended the asset freeze, receivership, and injunction. *Id.* This Court vacated the portions of the district court's preliminary injunction that relied on Section 13(b) to impose an asset freeze and receivership. The panel recognized that monetary relief is no longer available under Section 13(b) and, as a result, there is no need to preserve resources for a future judgment. *Id.* at *7. Accordingly, "the imposition of an asset freeze or receivership premised *solely* on § 53(b) is inappropriate." *Id.* (emphasis added).

The temporary restraining order and preliminary injunction in this case were entered by the District Court—and upheld by this Court—pursuant to *U.S. Oil & Gas Corp.*, and Section 13(b). This Court additionally affirmed the preliminary injunction and ancillary relief pursuant to Section 13(b), applying the prior panel

precedent rule because *U.S. Oil & Gas* had not yet been abrogated. *Simple Health Plans*, 792 F. App'x at 762 (finding Section 13(b) authorizes the FTC to file suit to enjoin acts or practices it believes are unlawful under the FTCA and that Mr. Dorfman's appeal was already decided under *U.S. Oil & Gas Corp.*); *see also Simple Health Plans*, 801 F. App'x at 688. The orders and decisions collectively recognize that the FTC's requested relief when it moved for the TRO and the preliminary injunction in this action was *solely* brought and granted under Section 13(b). Accordingly, the District Court's order denying Mr. Dorfman's motion to dissolve the preliminary injunction should be reserved pursuant to *AMG Capital* and this Court's decision in *On Point Capital*.

## 2.    The Disgorgement Sought by the FTC Is Penal and Punitive in Nature.

Even if Section 13 can be contorted to authorize the FTC to obtain equitable remedies, the form of monetary relief requested in the complaint, joint-and-several, "revenue-based disgorgement," is not equitable relief. In *Liu*, the Supreme Court specifically held that disgorgement measured by a defendant's revenues is a punitive sanction historically excluded from equity. *Liu*, 140 S. Ct. at 1949-50. Yet, even after the Supreme Court issued its landmark opinion in *Liu*, the FTC has requested punitive monetary damages (and other penal relief) without statutory authority. *See* 15 U.S.C. § 57b(b) (nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages).

34

*Liu* requires the Court to examine the complaint to determine whether the forms of relief requested by the government agency are limited to the traditional bounds of equity. *Liu*, 140 S. Ct. at 1942-43. The courts must evaluate whether each otherwise equitable remedy has been transformed into a punitive sanction. *Id.*; *see also S.E.C. v. Graham*, 823 F.3d 1357 (11th Cir. 2016). In *Liu*, the Supreme Court instructed that a remedy is not "equitable" if any of these factors exist: (1) any funds are distributed to recipients other than the defendants' victims, *Liu*, 140 S. Ct. at 1948-49; (2) it is imposed for "joint-and-several liability," *id.* at 1949; (3) it is a "penalty," *i.e.*, seeks to enforce a public law, *id.*, at 1944; or (4) the award exceeds a defendant's net profits (revenue less expenses), *id.* at 1942-43.

The FTC's request for monetary relief fails to qualify as "equitable" under each of the *Liu* requirements. First, the FTC is not required by statute to distribute disgorged funds to victims. *Id.* at 1947. Rather, the Second Amended Complaint seeks a judgment in favor of the FTC—a substantial portion of which will be "disgorgement" for the benefit of the U.S. Treasury. *See* D.E.449. The District Court's stipulated judgment against Ms. Girouard provided as much: "Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement." *Id.* at 13-14. It is error for the District Court to permit the FTC to use a chainsaw when, at most, a scalpel is appropriate: "the district court has the responsibility for tailoring the appropriate monetary relief." *F.T.C. v. Pantron I*

*Corp.*, 33 F.3d 1088, 1103 n.34 (9th Cir. 1994); *see also* Fed. Trade Comm'n, *Data on Refunds to Consumers*, https://www.ftc.gov/enforcement/cases-proceedings/refunds/data-refunds-consumers (last visited Nov. 24, 2021) (reflecting that in 2019 approximately 7% of the FTC's recovered funds went to recipients other than consumers).

Second, the FTC seeks to hold the Defendants jointly-and-severally liable, asking the District Court to order redundant disgorgement of the same monies from each and all of the respective Defendants, the hallmark of a penal sanction. D.E.289, ¶ 16 ("[E]ach of [the Defendants] is jointly and severally liable for the acts and practices alleged[.]"). The FTC is not allowed a double-recovery, yet this is precisely what it will receive, especially after it entered into a Stipulated Order For Permanent Injunction And Suspended Monetary Judgment with Ms. Girouard, D.E.449, which the District Court granted, D.E.450. Specifically, Ms. Girouard stipulated to judgment in the amount of $195,466,443, D.E.449, at 12, which is significantly higher than the Defendants' net receipts from HII, *see* D.E.375-5, ¶ 11.

Third, the allegations in the Second Amended Complaint are backward looking, seeking to address wrongs allegedly done in the past. *Graham*, 823 F.3d at 1361 (noting that "[u]nlike injunctive relief which addresses only ongoing or future violations, civil penalties address past violations" (internal quotation marks omitted)). Fourth, the FTC's requested monetary remedy is a "penalty" because the

FTC seeks it to enforce a public law—the FTCA—rather than resolve a private controversy between consumers and any of the Defendants. *See Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1643-44 (2017) (monetary relief is a penalty if it is sought to enforce a public law by a government entity).[6]   Finally, the FTC seeks "equitable disgorgement" of the Defendants' gross revenue, not their respective "net profits."

## II.    The District Court Erred When It Found That the FTC Was Likely to Succeed Under the TSR.

The District Court committed reversible error by concluding that the FTC is likely to succeed on the merits of its TSR claim.  D.E.446, at 7; D.E.139, at 20.  The District Court further found that it had the authority to issue the preliminary injunction pursuant to Section 19 because according to that section, the FTC can file a civil action for rule violations.  D.E.446, at 7.  The FTC's claims that the defendants violated Section 19 by violating the TSR is unsupported in the record.  D.E.289, ¶¶ 68-69.  The FTC failed to present any evidence of an alleged violation by the

---

[6] Not only has the FTC requested monetary relief in its complaint, but it also seeks to permanently ban the defendants from engaging in their business.  D.E.289.  After *Kokesh*, an industry bar is not properly considered equitable relief.  *Saad v. S.E.C.*, 873 F.3d 297, 305 (D.C. Cir. 2017) (Kavanaugh, J., concurring) ("Like other punitive sanctions, expulsion and suspension may deter others and will necessarily deter and prevent the wrongdoer from further wrongdoing. . . . But expulsion and suspension do not provide a remedy to the victim.   Under any common understanding of the term 'remedial,' expulsion and suspension of a securities broker are not remedial.  Rather, expulsion and suspension are punitive.").

defendants, as there is not a single fact in the record that the defendants initiated an outbound call to consumers.

### A. The District Court Erred Because There Is No Record Evidence That Mr. Dorfman or the Corporate Defendants Violated The TSR.

The FTC's claims that the defendants violated Section 19 by violating the TSR rests on its assertion that the defendants committed violative acts under the TSR. But, under the clear language of 16 C.F.R. § 310.6(b), all telephone calls between the consumer and defendants were exempt because defendants never "initiated" these calls. Accordingly, the FTC failed to show—and the District Court failed to find—that the defendants committed any rule violation subject to Section 19.

To be liable for violating the TSR, a defendant must "initiate" the violative calls to consumers. 16 C.F.R. § 310.6(b)(4)-(6) (exempting from the TSR's purview "[t]elephone calls initiated by a customer," with certain exceptions that are inapplicable here). The plain meaning of the term "initiate" underscores that a call "placed" to a consumer at the consumer's request is not "initiated" by the entity that places the call. The dictionary defines "initiate" to mean "causing or facilitating the beginning of: set going." *Initiate*, Merriam-Webster Dictionary, https://www.merriamwebster/dictionary/initiate. It is undisputed, that consumers initially connected with HBO to purchase a Limited Indemnity Medical Insurance Plan by

either: (1) calling HBO directly; or (2) being connected through a "warm transfer" conference call facilitated by a lead generator after the consumer completed a webform on the lead generator's website and requested to be connected to an insurance agency or brokerage.  D.E.375, ¶¶ 26, 39.  It is also undisputed that the defendants only placed calls or text messages to consumers that previously requested to be contacted about purchasing health insurance.  D.E.375, ¶¶ 27, 39-40.

The FTC provided no factual or legal authority to support its claim that the defendants "initiated" calls with consumers in violation of the TSR.  In fact, the clear language of the TSR makes clear that the defendants' receipt of telephone calls or calling consumers at *their* request does not constitute the defendants "initiating" a telephone call.  Because there is not a single fact in the record evidence that defendants initiated even a single outbound call, the District Court erred by finding that the FTC proved a likelihood of success on the merits.  Accordingly, the preliminary injunction is unsupported by the evidence and must be dissolved.

## <u>CONCLUSION</u>

Mr. Dorfman respectfully requests that this Court reverse the District Court's order denying the motion to dissolve the preliminary injunction and vacate the preliminary injunction.

Respectfully submitted,

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn (FBN 513857)
ryan.oquinn@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8553
Facsimile: (305) 675-7885

Rachel A.H. Horton
rachel.horton@dlapiper.com
DLA Piper LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3307
Facsimile: (215) 606-2077

*Attorneys for Steven J. Dorfman*

November 24, 2021

## **CERTIFICATION OF COMPLIANCE WITH RULE 32(a)**

I hereby certify, on this 24th day of November, 2021, that this Brief complies with the Type-Volume Limitation, Typeface Requirements, and Type-Style Requirements:

1.     This document complies with the word limit requirement of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,017 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in roman style typeface of 14 points.

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 24th day of November, 2021, pursuant to Federal Rule of Appellate Procedure 25(d) and 11th Circuit Rule 25-3(a), that I caused the foregoing Brief to be filed using the CM/ECF system, which constitutes service on all attorneys registered to use that system pursuant to 11th Cir. R. 25-3(a). I further certify that seven copies of this brief are being delivered via UPS to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit.

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn