No. 21-13116

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

SIMPLE HEALTH PLANS, LLC, *et al.*,
*Defendants*,

STEVEN J. DORFMAN,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida
0:18-cv-62593-DPG (Hon. Darrin P. Gayles)

## BRIEF OF THE FEDERAL TRADE COMMISSION

JAMES REILLY DOLAN
*Acting General Counsel*

JOEL MARCUS
*Deputy General Counsel*

Of Counsel:
ELIZABETH C. SCOTT
JOANNIE WEI
PURBA MUKERJEE
*Attorneys*

FEDERAL TRADE COMMISSION
Chicago, Illinois 60604

MATTHEW M. HOFFMAN
*Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3097
mhoffman@ftc.gov

No. 21-23116 (11th Cir.)
Federal Trade Commission v. Steven J. Dorfman

## RULE 26.1 CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit R. 26.1-1, Plaintiff-Appellee the Federal Trade Commission certifies that in addition to the persons listed in Appellant Steven J. Dorfman's brief, the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations may have an interest in the outcome of this appeal.

Akerman LLP – Receiver/Counsel for Receiver

Crespo, Janelly – Counsel for Defendant-Appellant

Gershoni, Elan – Former Counsel for Defendant-Appellant

Grossman, Bradley – FTC Attorney

Levit, Joan – Former Counsel for Receiver

Marcus, Joel – FTC Attorney

Mukerjee, Purba – FTC Attorney

Peoples, Gera – Counsel for Receiver

QBE Insurance Corp. – Intervenor-Defendant

Raschke, Erin Maureen – Counsel for QBE Insurance Corp.

Surgeon, Naim – Former Counsel for Receiver

QBE Insurance Group is a publicly traded corporation. The FTC further states that, to the best of its knowledge, no other publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Because this case involves issues of first impression before this Court involving Section 19 of the FTC Act, 15 U.S.C. § 57b, the FTC believes oral argument would be helpful to the Court.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ..........................................................3

QUESTION PRESENTED ........................................................................4

STATEMENT OF THE CASE...................................................................4

    A.    Dorfman's Telemarketing Scam ..........................................4

    B.    Course of Proceedings and Dispositions Below ..................8

STANDARD OF REVIEW .......................................................................15

SUMMARY OF ARGUMENT ................................................................15

ARGUMENT ..........................................................................................19

    I.    Section 19 Authorizes the Asset Freeze................................19

        A.    Relief Is Proper Under Section 19 Based on
Dorfman's Violations of the TSR................................19

        B.    An Asset Freeze Is Proper To Ensure That Funds
Are Available for Consumer Redress Under
Section 19....................................................................21

        C.    Dorfman Had All Required Notice...........................25

        D.    Dorfman's Arguments About the Ultimate Form of
Monetary Relief Are Premature..................................27

        E.    The District Court Was Not Required To Make the
FTC File a New Preliminary Injunction Motion. ......29

F.    Dorfman's Argument That the District Court Erred
in Finding a Likely TSR Violation Is Waived,
Barred by Law of the Case, and Wrong....................................29

II.    Dorfman's Arguments About the Receivership Are
Outside the Scope of the Court's Jurisdiction, Waived,
and Wrong. ............................................................................31

III.    The Preliminary Conduct Relief Must Be Affirmed...........................34

CONCLUSION .......................................................................................35

# TABLE OF AUTHORITIES

(Authorities principally relied upon are marked with an asterisk)

## CASES

*AMG Capital Mgmt., LLC v. FTC,*
   141 S. Ct. 1341 (2021) ..................................................................... 2, 13, 18, 35

*De Beers Consol. Mines, Ltd. v. United States,*
   325 U.S. 212 (1945) ........................................................................................24

*DeLong Equip. Co. v. Wash. Mills Electro Minerals Corp.,*
   990 F.2d 1186 (11th Cir. 1993) .....................................................................22

*Dillard v. Baldwin County Comm'rs,*
   376 F.3d 1260 (11th Cir. 2004) .....................................................................15

*FTC v. Dean Foods,*
   384 U.S. 597 (1966) ........................................................................................24

*FTC v. Gem Merch. Corp.,*
   87 F.3d 466 (11th Cir. 1996) ...........................................................................9

*\*FTC v. H.N. Singer, Inc.,*
   668 F.2d 1107 (9th Cir. 1982) .......................................................................23

*FTC v. Hanley,*
   No. 20-15143, 2022 WL 187848 (9th Cir. Jan. 20, 2022) ..............................20

*\*FTC v. On Point Capital Partners, LLC,*
   17 F.4th 1066 (11th Cir. 2021) ................................................................ 18, 34

*\*FTC v. Simple Health Plans, LLC,*
   792 F. App'x 761 (11th Cir. 2020) .......................................................... 12, 35

*\*FTC v. Simple Health Plans, LLC,*
   801 F. App'x 685 (11th Cir. 2020) ........................................................ 1, 11, 22

*\*FTC v. Southwest Sunsites, Inc.,*
   665 F.2d 711 (5th Cir. 1982) .........................................................................24

*\*FTC v. U.S. Oil & Gas Corp.,*
   748 F.2d 1431 (11th Cir. 1984) ........................................................... 2, 9, 12, 35

*In re Fredeman Litig.,*
   843 F.2d 821 (5th Cir. 1988) .........................................................................23

*Kaimowitz v. Orlando,*
   122 F.3d 41 (11th Cir. 1997) ..................................................................... 4, 32

*Liu v. SEC,*
  140 S. Ct. 1936, 1940 (2020)..................................................................21

*Smith v. Sec'y, Dep't of Corr.,*
  572 F.3d 1327 (11th Cir. 2009) ...................................... 21, 25, 26, 30

*United States v. Escobar-Urrego,*
  110 F.3d 1556 (11th Cir. 1997) ..........................................................30

*United States v. Jordan,*
  429 F.3d 1032 (11th Cir. 2005) ..........................................................22

*United States v. Pilati,*
  627 F.3d 1360 (11th Cir. 2010) ..........................................................30

*United States v. Stein,*
  964 F.3d 1313 (11th Cir. 2020) ................................................... 22, 30

*Williams v. Mukasey,*
  531 F.3d 1040 (9th Cir. 2008) .............................................................26

**STATUTES**

15 U.S.C. § 45............................................................................................8

15 U.S.C. § 45(b).....................................................................................11

15 U.S.C. § 53(b) ............................................................................. 1, 3, 9

15 U.S.C. § 57a........................................................................................20

15 U.S.C. § 57b ................................................................................. 2, 12

15 U.S.C. § 57b(a)(1) ......................................................................... 3, 19

15 U.S.C. § 57b(b) ..................................................... 2, 12, 13, 23, 25

15 U.S.C. § 6102(c)(1) ................................................................ 15, 20, 26

28 U.S.C. § 1292(a) ..................................................................................3

28 U.S.C. § 1331 .......................................................................................3

28 U.S.C. § 1337(a) ..................................................................................3

28 U.S.C. § 1345 .......................................................................................3

28 U.S.C. § 1651 ......................................................................................24

Affordable Care Act,
  42 U.S.C. §§ 18001-18122 ..................................................................4

Pub. L. 111-203, § 1100C(a),
    124 Stat. 1376, 2110 (2010) ................................................................20

Pub. L. No. 93-637, § 206(a),
    88 Stat. 2183, 2201 (1975)...................................................................19

Telemarketing and Consumer Fraud and Abuse Prevention Act, 15
    U.S.C. §§ 6101-6108 ...........................................................................20

## REGULATIONS

16 C.F.R. § 310.2(ff)................................................................................30

16 C.F.R. § 310.3(a)(2)(vii) .......................................................................8

16 C.F.R. § 310.3(a)(4) ..............................................................................8

16 C.F.R.§ 310.6(b)(4)-(6).......................................................................30

310.3(a)(2)(iii).............................................................................................8

Telemarketing Sales Rule,
    16 C.F.R. Part 310 ..............................................................................2, 8

TSR Statement of Basis and Purpose,
    68 Fed. Reg. 4580 (2003) ....................................................................31

## RULES

Fed. R. App. P. 28(a)(8)............................................................................29

## OTHER AUTHORITIES

FTC, *FTC Refunds to Consumers*, Fiscal Year 2017 to 2021 .................28

*Merriam-Webster.com* ..............................................................................31

## INTRODUCTION

Appellant Steven J. Dorfman operated a deceptive telemarketing scheme that purported to offer comprehensive health insurance but actually sold limited-coverage indemnity plans that did not pay for most medical costs. Tens of thousands of Americans fell victim to this scam, with many suffering devastating financial or medical consequences, while Dorfman pocketed more than $180 million. The Federal Trade Commission sued Dorfman and his companies, seeking an injunction against these deceptive practices and the return to consumers of the money Dorfman took. The district court entered a preliminary injunction under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), that halted the scam, froze Dorfman's assets to preserve money for consumer redress, and appointed a receiver to take over management of Dorfman's businesses and preserve their assets. It found those remedies necessary in light of its finding, after an evidentiary hearing, that Dorfman was the "mastermind" of a "classic bait and switch scheme" and that there was a risk he would conceal or dissipate his assets absent the freeze and receivership. ECF No. 139 at 1, 21, 23-24.

This Court affirmed the preliminary injunction and separately affirmed an order denying Dorfman's motion to dissolve the injunction. *FTC v. Simple Health Plans, LLC*, 801 F. App'x 685 (11th Cir. 2020) ("*Simple Health I*"). It relied on then-controlling precedent holding that Section 13(b) authorizes district courts to

order equitable monetary relief to redress consumer injury and impose asset freezes to ensure money remains available for such redress. *See, e.g.*, *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984). But the Supreme Court later overruled that line of authority, holding in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021), that Section 13(b) does not authorize monetary relief.

Following *AMG*, Dorfman moved to dissolve the preliminary injunction. The district court denied the motion. ECF No. 446. It held that preliminary relief, including the asset freeze and receivership, remained proper because in addition to asserting Section 13(b) claims, the FTC had also asserted claims under Section 19 of the FTC Act, 15 U.S.C. § 57b. That section permits the FTC to sue defendants who violate consumer protection regulations and obtain "such relief as the court finds necessary to redress injury to consumers," including "the refund of money." *Id.* § 57b(b). The court had previously found that the FTC was likely to prevail on its claim that Dorfman's activities violated the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310, which outlaws various deceptive or abusive telemarketing acts or practices. ECF No. 139 at 20. Relying on that finding, the court concluded that relief was available under Section 19 and that the asset freeze and receivership remained "necessary to protect consumers, preserve assets for consumer redress, and preserve the status quo." ECF No. 446 at 8.

Dorfman now appeals the denial of his post-*AMG* motion to dissolve. Many of his arguments were not presented to the district court at all. These arguments are waived and the Court may easily dispense with them. Other arguments rehash issues that were decided in the previous appeals and hence are barred by the law-of-the-case doctrine. But in any case, all Dorfman's arguments lack merit. The plain language of Section 19 gives the district court authority to impose any remedy it deems necessary to redress consumer injury resulting from a rule violation. Given the prior findings that the FTC is likely to succeed on the merits of its Telemarketing Sales Rule claims and that Dorfman is likely to conceal or transfer his assets if given the opportunity to do so, the district court acted well within its discretion in maintaining the asset freeze and receivership. Dorfman offers no argument that *AMG* affects the conduct relief portion of the preliminary injunction, and it plainly does not. The district court's order denying the motion to dissolve should be affirmed.

## JURISDICTIONAL STATEMENT

The FTC sued Dorfman under Sections 13(b) and 19(a)(1) of the FTC Act, 15 U.S.C. §§ 53(b) and 57b(a)(1). The district court had jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345. The district court entered its order denying the motion to dissolve on September 5, 2021. Dorfman timely filed a notice of appeal on September 10, 2021. This Court has jurisdiction under 28 U.S.C. § 1292(a), but

that jurisdiction is limited to matters "directly related" to the denial of the motion to dissolve. *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997).

## QUESTION PRESENTED

Did the district court act within the scope of its discretion in denying Dorfman's motion to dissolve the preliminary injunction?

## STATEMENT OF THE CASE

### A.    Dorfman's Telemarketing Scam

After reviewing considerable evidence, the district court found that Dorfman operated a "bait and switch scheme" that "led consumers to believe they were purchasing comprehensive health insurance when, in fact, they received limited indemnity plans or discount memberships" that were "practically worthless." ECF No. 139 at 1, 3. As the court explained, "[c]omprehensive health insurance is exactly what the name implies—comprehensive," covering a large portion of the expense for doctor's visits, emergency room visits, hospital stays, laboratory services, and prescription medicine. *Id.* These plans shift the risk of large medical bills from the consumer to the insurer. *Id.* Many comprehensive plans comply with the Affordable Care Act ("ACA"), 42 U.S.C. §§ 18001-18122, by covering pre-existing conditions, emergency medical care, hospitalization, prescription medication, preventative care, maternity care, and pediatric care. *Id.* By contrast, indemnity plans do not comply with the ACA, but pay a fixed amount to

4

consumers after medical costs are incurred. The risk that medical bills will exceed the specified indemnity amount falls solely on consumers. *Id.* at 4.

Dorfman and a network of companies he owned and controlled (operating under the umbrella name "Simple Health") paid Google to steer consumers to his websites when they searched for popular terms like "Obama Care" or "Obama Care Insurance." *Id.* at 4-5. Dorfman's websites, which operated under domain names like "obamacarequotes.org" and "healthinsurance2017deadline.com," falsely suggested they were selling comprehensive and/or ACA-compliant plans. In fact, Dorfman was offering indemnity plans issued through a company called Health Insurance Innovations, Inc. ("HII"), which paid Dorfman a commission when consumers purchased policies. Dorfman's websites and sales tactics were highly misleading. The websites prominently displayed the logos of the Blue Cross Blue Shield Association and AARP, repeatedly referred to "Obamacare" and the "ACA," indicated that the policies offered low copays and covered hospitalizations and emergency room visits, and stated that "[t]his is not a discount health care; it's real insurance." *Id.* at 6. They also represented that Dorfman's companies were experts on government-sponsored insurance that had helped "hundreds of thousands of consumers" enroll for ACA coverage. *Id.* at 6.

Consumers who expressed interest were called by a telemarketer who read from scripts that Dorfman had personally approved. *Id.* at 6-7. These scripts were

5

designed to give consumers the impression that Dorfman's coverage was "equal to, if not better than, major medical insurance." *Id.* at 7. A telemarketer following the scripts would congratulate the consumer on being approved for a "health insurance plan" and represent that the plan would be "similar" to plans received through an employer. *Id.* In particular, consumers were told that the policy included "a prescription drug plan," "doctor office visits," "diagnostic testing," "hospital coverage," and "medical" and "surgical" care that "can be used at virtually ANY inpatient or outpatient facility in the NATION." *Id.* at 7-8.

After consumers paid an enrollment fee and the first monthly premium, Dorfman's telemarketers would read them a "Post Close Script." *Id.* at 8. That script explained that the customer would be transferred to a corporate verification department, and that some of the information conveyed by that department (*i.e.*, the actual terms of the deal) "will not apply to you." *Id*. At that point, Dorfman's representatives revealed for the first time that the consumers had actually purchased limited benefit plans that were not compliant with the ACA. *Id.* Although those disclosures were recorded, Dorfman's employees would turn off the recording when responding to consumers' questions. *Id.* Dorfman's "verification rebuttal" script directed his staff that if the call was no longer being recorded, they should stress that "[t]his is health insurance." *Id.* But if the call was still being recorded, the script told them to say the opposite. *Id.*

6

When Dorfman's customers complained about their lack of coverage, they were "often subjected to additional misrepresentations and delay tactics." *Id.* Consumers were shuffled between various customer service agents, resulting in continued "inadequate coverage, no refund, and lots of frustration." *Id.* at 9.

Dorfman's scheme shattered the lives of many victims. For example, Douglas Meeker was told that his vascular surgeon was "in-network," that his co-pays would not exceed $50, and that his out-of-pocket expenses would be capped at $2,000. *Id.* at 10. None of this was true. Without Mr. Meeker's knowledge, Dorfman's representatives actually enrolled him in "a limited benefit plan with little coverage," after which he had a heart attack and was diagnosed with lymphoma. *Id.* He died in 2017 leaving his family stuck with nearly $300,000 in medical bills, almost none of which were covered by Dorfman's plan. *Id.*

Similarly, Chris Mitchell was sold what Dorfman's sales representatives described as "an excellent 'PPO plan' with an 'A-rated carrier' that qualified as an ACA plan." *Id.* at 9. He was told that he would have to pay no more than $10 for doctor's visits and that the plan would also cover diagnostic testing, bloodwork, surgeries, and hospital visits. *Id.* at 9-10. Days before Mr. Mitchell went in for life-saving cancer surgery, however, he "learned that his plan did not cover surgeries" and was forced to pay out of pocket. *Id.* at 10.

Dorfman's scheme was as lucrative for him as it was devastating for his victims. Between 2014 and 2018, his companies reaped approximately $180 million in commissions (out of $400 million received by HII), which came directly out of the "premiums" his customers paid for their worthless plans. *Id.* at 11; ECF No. 376-1 at 14-15.

**B.    Course of Proceedings and Dispositions Below**

1.    <u>The Original Complaint</u>. In October 2018, the FTC sued Dorfman and his companies alleging violations of both Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits unfair or deceptive acts or practices in or affecting commerce, and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, which outlaws deceptive or abusive telemarketing acts or practices. The complaint alleged that Dorfman and his companies violated TSR provisions that bar a seller or telemarketer from (a) directly or indirectly misrepresenting the nature or central characteristics of goods or services that are the subject of a sales offer, (b) misrepresenting the seller or telemarketer's "affiliation with, or endorsement or sponsorship by, any person or government entity," or (c) making false or misleading statements to induce any person to pay for goods or services. 16 C.F.R. § 310.3(a)(2)(iii), (a)(2)(vii) & (a)(4).

The FTC brought its original complaint under Section 13(b) of the FTC Act which authorizes courts to issue a "permanent injunction" against violations of

8

"any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b). At the time, it was established law in this Circuit and others that the district court's statutory authority to grant a permanent injunction encompassed the authority to award equitable monetary remedies, such as restitution or disgorgement, and to freeze assets to preserve them for eventual remedies. *See FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468-69 (11th Cir. 1996); *U.S. Oil & Gas*, 748 F.2d at 434-35. On the authority of that case law, the FTC sought an injunction against further violations of the FTC Act and the TSR; equitable monetary relief, including but not limited to "restitution, the refund of monies paid, and the disgorgement of ill-gotten monies"; and preliminary relief as discussed below. ECF No. 1 at 27.

2. The TRO and Preliminary Injunction. Shortly after the complaint was filed, the district court issued an *ex parte* TRO that barred Dorfman and his companies from continuing to misrepresent their products or releasing customer information to others, froze their assets, and appointed a receiver to take control of the businesses. ECF No. 15.[1] It then held a preliminary injunction hearing, at

---

[1] Dorfman consented to extension of the TRO until a hearing on a preliminary injunction and then requested and received several postponements of that hearing. He then changed his mind and purported to withdraw his consent to the extensions. When the district court denied relief, he appealed; this Court dismissed that appeal (No. 19-10840) for lack of appellate jurisdiction.

which the FTC presented live testimony from two of Dorfman's former customers, over 1000 pages of documents, and the receiver's initial report. The evidence showed that unless Dorfman's assets remained frozen, he would likely dissipate them, leaving his victims without redress. Dorfman had already spent millions of swindled dollars on jewelry, luxury cars (including a Range Rover, a Lamborghini, and a Rolls-Royce), gambling sprees ($368,000 at a single casino), nightclub trips ($57,000 from one night's outing alone), an oceanfront condominium, and a lavish wedding on which he spent $133,000 just for flowers. ECF No.12-1 at 21-22; ECF No. 12-7 at 84-90, 130-35. At the time of the hearing, the receiver had only been able to recover approximately $3 million of the more than $180 million Dorfman bilked from consumers. ECF No. 122 at 8. Dorfman also maintained offshore bank accounts to which funds could be readily transferred. *Id.*

The court granted the preliminary injunction. ECF No. 139. It found that "the FTC gives a well-documented account of a classic bait-and-switch scheme— aided by rigged internet searches, deceptive sales scripts, and predatory practices" that left Dorfman's victims with "inadequate health coverage and devastating medical bills." *Id.* at 1. The court found that the FTC had shown a likelihood of success as to both the Section 5 claims and the TSR claims, *id.* at 15-20, and that Dorfman was individually liable as the "mastermind" behind the deceptive scheme. *Id.* at 21. It concluded that a "preliminary injunction is necessary to protect

10

consumers, prevent future violations of the law, protect assets, and to preserve the status quo pending the resolution of this litigation." *Id.* at 2.

Dorfman appealed the preliminary injunction (in No. 19-11932). He did not challenge any of the district court's factual findings or its conclusion that injunctive relief was proper. He argued only that the district court lacked authority under Section 13(b) to order an asset freeze or appoint a receiver. The Court, bound by its precedent, rejected that argument and affirmed the preliminary injunction. *Simple Health I*, 801 F. App'x at 688.

While that appeal was pending, Dorfman also filed a motion in the district court to dissolve the injunction based on a different legal argument about Section 13(b)—that the statute requires the court to dissolve a preliminary injunction if the FTC does not file an administrative complaint within 20 days after the injunction issues. ECF No. 157.[2] That argument was also contrary to controlling precedent.

―――――――――――

[2] The FTC enforces the laws under its purview both through administrative proceedings before the Commission, which may culminate in the issuance of a cease-and-desist order, *see* 15 U.S.C. § 45(b), and through lawsuits in federal court. But the Commission does not have the authority to order preliminary relief in an administrative proceeding. The first part of Section 13(b) permits the FTC to sue in district court for a preliminary injunction pending the conclusion of an administrative proceeding (*e.g.,* to block a merger while the Commission reviews its legality). When the FTC sues under this part of Section 13(b), it must commence the administrative proceeding within 20 days after the preliminary injunction issues. But a separate, subsequent proviso authorizes the FTC to file actions for a "permanent injunction" without commencing an administrative

*See U.S. Oil & Gas*, 748 F.2d at 1434-35. The district court denied the motion, ECF No. 183, and Dorfman appealed yet again (in No. 19-13275). This Court summarily affirmed, *FTC v. Simple Health Plans, LLC*, 792 F. App'x 761 (11th Cir. 2020) ("*Simple Health II*"), and denied Dorfman's rehearing petitions.

　　3.　The Amended Complaints. After this Court affirmed the preliminary injunction, the FTC filed an amended complaint that continued to seek relief under Section 13(b) but added an additional statutory ground for relief: Section 19 of the FTC Act, 15 U.S.C. § 57b.[3] As relevant here, Section 19 permits the FTC to sue defendants who have violated an FTC rule respecting unfair or deceptive acts or practices, and gives the district court "jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations." *Id.* § 57b(b).[4] That relief "may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property,

---

proceeding. *See* discussion *infra* at 34-35. This case is brought under the permanent injunction proviso.

　[3] After the FTC filed its first amended complaint (ECF No. 231), the district court ordered it to file a second amended complaint with additional details (not relevant here). ECF No. 287. We cite to the second amended complaint (ECF No. 289) which is the operative pleading.

　[4] Section 19 also allows the FTC to sue defendants for consumer redress after the Commission has conducted an administrative proceeding and ordered them to cease and desist from unfair or deceptive acts or practices, but that provision is not at issue here.

the payment of damages, and public notification respecting the rule violation …."
*Id.* The amended complaint alleged that Dorfman and his co-defendants were liable
under Section 19 based on their violations of the TSR. ECF No. 289 at 2, 29-30. It
continued to seek the same equitable monetary relief sought in the original
complaint, including "restitution, the refund of monies paid, and the disgorgement
of ill-gotten monies." *Id.* at 30.

4.    <u>Second Motion to Dissolve the Preliminary Injunction</u>. In April 2021,
the Supreme Court issued its decision in *AMG*, holding (contrary to longstanding
precedent from multiple circuits) that Section 13(b) does not authorize district
courts to award monetary relief. *AMG*, 141 S. Ct. at 1352. The Court made clear,
however, that "[n]othing we say today… prohibits the Commission from using its
authority under § 5 and § 19 to obtain restitution on behalf of consumers." *Id.*

With the ink barely dry on the *AMG* decision, Dorfman filed an "emergency
motion" to dissolve the preliminary injunction. He presented a bare-bones
document containing no argument beyond a conclusory assertion that *AMG*
required dissolution of the entire preliminary injunction, with no discussion of
Section 19. ECF No. 418. Dorfman provided a little more argument—very little—
in a reply brief. ECF No. 427. He argued that the TSR is not enforceable under
Section 19, and that even if it is, the court was required to dissolve the existing
preliminary injunction and order the FTC to seek a new one. *Id.* at 7.

The district court directed the parties to submit supplemental briefs addressing specific questions it had about the *AMG* case and the TSR. ECF No. 430. After reviewing those briefs, it denied Dorfman's motion. ECF No. 446. The district court held that "[b]ased on a review of the Supreme Court's holding in *AMG*, the plain language of the [FTC] Act and the [Telemarketing Act], and the allegations in the original complaint," it had "authority under § 19 of the Act to issue the preliminary injunction, order the asset freeze, and appoint the Receiver." *Id.* at 4. The court found that *AMG* did not dictate otherwise because the FTC did not assert a claim under Section 19 or allege violation of a consumer protection rule in that case. *Id.* at 5. It held that the plain language of Section 19 authorized the FTC to sue in court for rule violations without filing an administrative proceeding, that the TSR is enforceable under Section 19, and that it was not necessary for the FTC to file a new motion for preliminary injunction since the original complaint already alleged TSR violations. *Id.* at 7-8. The court held that the FTC "continues to have a likelihood of success on its § 5 and TSR claims, and a preliminary injunction and asset freeze are necessary to protect consumers, protect assets for consumer redress, and preserve the status quo." *Id.* at 8.

Dorfman now appeals the denial of his post-*AMG* motion to dissolve.

## STANDARD OF REVIEW

An order declining to dissolve an injunction is reviewed for abuse of discretion. *E.g.*, *Dillard v. Baldwin County Comm'rs*, 376 F.3d 1260, 1264-65 (11th Cir. 2004). Whether the district court had legal authority to maintain the injunction under Sections 13(b) and 19 is an issue of law reviewed *de novo*. *Id.* at 1265.

## SUMMARY OF ARGUMENT

1.     Dorfman's challenges to the asset freeze in this case all fail. He concedes that when the FTC seeks equitable monetary relief under Section 19, the district court may properly order equitable preliminary relief such as an asset freeze. Br. 21. His assertion that no such remedy is available here because the FTC may not enforce the TSR through Section 19 is wrong. The statute that directed the FTC to promulgate the TSR provides that any violation "shall be treated" as a violation of a rule under the FTC Act, which is makes it enforceable under Section 19. *See* 15 U.S.C. § 6102(c)(1).

Dorfman waived his argument that that an asset freeze is improper because the FTC is seeking legal relief—*i.e.*, damages—because he did not raise it in the district court, but in any event he is wrong. As the complaint makes clear, the FTC seeks only equitable monetary relief, not damages. By Dorfman's own concession, the district court therefore had authority under both Section 19 and Section 13(b) to

freeze Dorfman's assets to preserve their availability for consumer redress. Furthermore, this Court already held in *Simple Health I* that asset freeze was proper, which necessarily implies that the relief sought by the FTC is equitable; that decision is the law of the case Dorfman also waived his argument that there is no form of final equitable relief the district court could award under Section 19. In any event, Dorfman offers no reason why the district court may not equitably order him to restore to victims the money he unlawfully received. Section 19 plainly authorizes such relief, no matter what label (e.g., "refund," "restitution," or "disgorgement") is attached to that remedy. Contrary to Dorfman's assertion, the FTC is not seeking a punitive remedy—it merely seeks to return to consumers money that is rightfully theirs, and to ensure that Dorfman does not dissipate his assets during the pendency of this litigation.

Dorfman's other challenges to the asset freeze also fail. He waived the claim that he lacked adequate "notice" by failing to raise it below. It is wrong anyway, since Dorfman had notice of both the TSR's requirements and the proceedings against him. The Court should not address Dorfman's speculative arguments about the ultimate form that monetary relief may take, which present no concrete controversy at this point (and which are based on false assumptions in any event). And the district court acted within its discretion in maintaining the existing injunction based on its prior factual findings, rather going through the empty

formality of starting from scratch on a new motion when the outcome was foreordained.

Dorfman's waived his that the district court erred in its original preliminary injunction ruling when it found that the FTC had shown a likelihood of success on its TSR claims because he did not make the argument in his district court papers. The argument is also barred by the law-of-the-case doctrine because Dorfman could have challenged the likelihood-of-success finding in *Simple Health I* but chose not to. The argument fails on the merits anyway. Dorfman contends that there was no TSR violation because consumers "initiated" the calls, but the district court found that Dorfman's telemarketers called the consumers. In ordinary English, the person who places a call is the one who initiates it.

2.     For the same reasons the district court had authority to maintain the asset freeze, it also had authority to maintain the receivership, which it found was necessary to preserve assets and identify victims. Dorfman's main argument about the receivership is not that the district court lacked authority to maintain it, but rather that the receivership effectively deprived the corporate defendants of legal representation. This argument is not directly related to the denial of the motion to dissolve and therefore outside the scope of this Court's limited jurisdiction on an interlocutory appeal. Furthermore, the argument is waived because Dorfman did not raise it in the district court. But in any case, Dorfman had the opportunity to

17

retain counsel for the corporate defendants. He chose not to do so, but instead asked the district court to order the Receiver to answer the complaint, which it did. Thus the corporate defendants are represented by counsel. Dorfman should raise any issues he may have with that representation in the district court.

3.    Although Dorfman seeks dissolution of the entire preliminary injunction, he does not offer any argument as to why the portions of the injunction preventing him from engaging in further deceptive practices or releasing consumer information should be set aside. Nothing in *AMG* affects the district court's authority under Section 13(b) to order this kind of preliminary conduct relief, as this Court has recently recognized. *See FTC v. On Point Capital Partners, LLC*, 17 F.4th 1066, 1084 (11th Cir. 2021). Dorfman also briefly argues that a preliminary injunction under Section 13(b) cannot last longer than 20 days unless the FTC also commences an administrative proceeding. Dorfman waived the issue by failing to raise it in his district court papers, but he made the same argument in *Simple Health II* and the Court rejected it based on the contrary holding in *U.S. Oil & Gas*. Thus the argument is squarely barred by both the law of the case and the law of this Circuit. *AMG* does not affect those holdings; to the contrary, it indicates that the FTC may seek injunctive relief under Section 13(b) even if administrative proceedings are not "foreseen or in progress." 141 S. Ct. at 1349.

18

## ARGUMENT

Dorfman argues in a variety of ways that the Supreme Court's decision in *AMG* required the district court to dissolve the preliminary injunction in its entirety, focusing most of his attention on the court's decision to maintain the asset freeze. Many of these arguments are not properly before the Court, but in any event, none can withstand scrutiny.

## I.    SECTION 19 AUTHORIZES THE ASSET FREEZE.

The district court correctly held that it had the authority to maintain the asset freeze under Section 19. Dorfman's arguments to the contrary are meritless.

### A.    Relief Is Proper Under Section 19 Based on Dorfman's Violations of the TSR.

Dorfman concedes that when the FTC seeks equitable final relief, a district court may award equitable preliminary relief, such as an asset freeze. Br. 21. His principal argument is that a TSR violation is not a valid basis for suit under Section 19, and hence that there is no basis for monetary relief. Section 19 allows the FTC to bring suit against any person who violates "any rule under this subchapter," *i.e.*, a rule issued under the FTC Act. 15 U.S.C. § 57b(a)(1).[5] Dorfman's claim is that the TSR does not count as a rule under the FTC Act because it was promulgated

---

[5] Although we cite to the U.S. Code for convenience, the official statutory text of Section 19 refers to a violation of "any rule under this Act." Pub. L. No. 93-637, § 206(a), 88 Stat. 2183, 2201 (1975).

under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, rather than the FTC Act itself. Br. 19-20.

This argument founders on the plain language of the Telemarketing Act, which Dorfman ignores. In that Act, Congress directed the FTC to issue rules prohibiting deceptive or abusive telemarketing acts or practices, and specified that "[a]ny violation" of such rules "shall be treated as a violation of a rule under section 57a of this title regarding unfair or deceptive acts or practices." 15 U.S.C. § 6102(c)(1).[6] "Section 57a of this title" is Section 18 of the FTC Act—the provision that authorizes the FTC to issue consumer protection rules. 15 U.S.C. § 57a. In other words, the Telemarking Act expressly authorizes the FTC to enforce the TSR in exactly the same way that it would enforce a rule issued under the FTC Act itself, including by filing suit under Section 19.[7]

---

[6] The official statutory text provides that violation of the TSR "shall be treated as a violation of a rule under Section 18 of the Federal Trade Commission Act regarding unfair or deceptive acts or practices." Pub. L. 111-203, § 1100C(a), 124 Stat. 1376, 2110 (2010).

[7] The Ninth Circuit recently applied the same principle in an analogous situation, holding that a regulation promulgated under the Dodd-Frank Act was enforceable under Section 19 where the statute provided that the FTC could enforce these rules under the FTC Act. *FTC v. Hanley*, No. 20-15143, 2022 WL 187848, at *1 (9th Cir. Jan. 20, 2022).

**B.  An Asset Freeze Is Proper To Ensure That Funds Are Available for Consumer Redress Under Section 19.**

As discussed above, Dorfman concedes that under Section 19, a district court may order an assert freeze when the FTC seeks "equitable final relief." Br. 21. But he contends that an asset freeze is not appropriate here because the FTC seeks "legal relief in the form of damages." *Id.* Dorfman made no such claim in his motion papers before the district court, and the argument is therefore waived. *See, e.g.*, *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1352 (11th Cir. 2009). But in any event, Dorfman's argument is wrong because it mischaracterizes the relief the FTC is seeking.

Contrary to Dorfman's assertion, the FTC seeks only equitable remedies, not legal ones. The operative complaint is titled "Second Amended Complaint for Permanent Injunction and Other Equitable Relief," and it seeks "rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief." ECF No. 289 at 1, 2. The complaint does not seek legal relief—*i.e.*, "damages"—even though many of Dorfman's victims suffered substantial consequential damages as a result of his misrepresentations. To be sure, the FTC is seeking monetary relief, but the Supreme Court has made clear that monetary relief may be equitable in nature. *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020).

21

Furthermore, the Court has already decided in *Simple Health I* that the monetary relief sought by the FTC is equitable such that an asset freeze is appropriate. That decision is now law of the case. *See, e.g.*, *DeLong Equip. Co. v. Wash. Mills Electro Minerals Corp.*, 990 F.2d 1186, 1196 (11th Cir. 1993) (law-of-the-case doctrine precludes reconsideration of issues of matters decided explicitly or "by necessary implication" at an earlier stage of the same case).[8] In the earlier appeal Dorfman argued that the monetary relief sought by the FTC amounted to "legal remedies" and "punitive measures." *Simple Health I*, 801 F. App'x at 687. The Court rejected those arguments and held that an asset freeze was proper, which necessarily implies that the ultimate relief the FTC seeks is equitable. *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument."). And while the FTC now seeks that

---

[8] This Court has recognized only three narrow exceptions to the law-of-the-case doctrine: if "(1) the evidence on a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of the law applicable to the issue, or (3) the previous decision was clearly erroneous and would work a manifest injustice." *United States v. Stein*, 964 F.3d 1313, 1323 (11th Cir. 2020). None of them applies here. There has been no subsequent trial. While *AMG* held that equitable monetary relief was not available under Section 13(b), it did not hold that the relief sought by the FTC was not equitable. And the Court's conclusion that an asset freeze to preserve funds for equitable monetary relief (where such relief is authorized) was neither clearly erroneous nor works a "manifest injustice."

relief under Section 19 rather than Section 13(b), the nature of the relief it seeks has not changed at all. It remains equitable.

Dorfman's concession that Section 19 authorizes district courts to award preliminary relief ancillary to an equitable remedy is compelled by the language of the statute. On its face, Section 19 empowers district courts to award *any* relief "necessary to redress injury to consumers" or others. 15 U.S.C. § 57b(b). As the Ninth Circuit has held, that broad language plainly authorizes an asset freeze where the FTC seeks equitable relief under Section 19 based upon a rule violation. *See FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1109-10, 1112 (9th Cir. 1982).[9] If a district court could not keep a defendant from wasting assets (as Dorman was actively doing) while a Section 19 case is pending, its jurisdiction to redress consumer injury would be severely undermined, if not rendered meaningless. In this case, the district court found that the asset freeze was "necessary" to "protect assets for consumer redress." ECF No. 446 at 8. That finding justified an asset freeze under Section 19.

---

[9] While courts generally may not freeze a defendant's assets where the plaintiff seeks only money damages, Dorfman's own principal case establishes that "Congress … has the power to authorize preliminary injunctions of this sort" by statute. *In re Fredeman Litig.*, 843 F.2d 821, 828 (5th Cir. 1988). Nothing in the text of Section 19 indicates that the district court's authority to grant preliminary relief necessary to ensure consumer redress differs depending on whether the FTC seeks equitable monetary relief or damages. But the Court need not address that issue because the FTC does not seek damages here.

Other statutes also operate in conjunction with Section 19 to authorize an asset freeze here. Section 13(b) empowers a district court to grant a permanent injunction, which carries with it the power to grant preliminary relief. *See De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). Thus where the FTC seeks relief under Section 19, a court may order an asset freeze under Section 13(b) to preserve the possibility of consumer redress under Section 19. *See FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711, 719-20 (5th Cir. 1982). *AMG* does not apply in this situation, because the asset freeze itself is a purely injunctive form of relief designed to maintain the status quo and preserve the court's ability to award monetary relief that is expressly authorized by Section 19. And even if Sections 13(b) and 19 did not justify an asset freeze, the district court would have authority under the All Writs Act, 28 U.S.C. § 1651, to order such relief to ensure that its final decree will not be futile. *See, e.g.*, *FTC v. Dean Foods*, 384 U.S. 597, 606 (1966).

Dorfman also argues that the district court cannot order either "rescission" or a "refund" here because even though his telemarketers arranged the sale of indemnity policies and collected payment information, the policies were actually sold by HII, which paid Dorfman a commission. Br. 25. Again, this argument was not raised in the district court and is therefore waived. *See, e.g.*, *Smith*, 572 F.3d at

1352. But in any event, Dorfman cites no authority for the proposition that he cannot be required to "refund" to consumers money he and his companies received as a result of their having illegally persuaded victims to turn over that money in the first place. Furthermore, as noted above, the district court is not limited to the remedies specifically listed in the statute; it may order any type of relief it deems "necessary to redress injury." 15 U.S.C. § 57b(b). At this stage of the proceedings, where the only issue is the propriety of an asset freeze, it does not matter whether the ultimate form of relief is labeled as a "refund" or something else (*e.g.*, restitution or disgorgement).

Finally, Dorfman's repeated characterization of the asset freeze and ultimate monetary remedy sought by the FTC as "penal" or "punitive" is incorrect (as the Court recognized in *Simple Health I*). The FTC is seeking the compensatory remedy that Section 19 authorizes: redress to consumers. It seeks to restore to Dorfman's victims the money he obtained from them through his deceptive practices—nothing more, and nothing less. The corresponding purpose of the asset freeze is simply to ensure that he does not waste or hide funds in the meantime, which the district court found likely if the money remained unrestricted.

### C.    Dorfman Had All Required Notice.

Dorfman argues that he did not receive adequate notice either of what the TSR requires or of the proceedings against him. Br. 26-28. He made no such

25

claims before the district court and thus waived the issue. *See, e.g.*, *Smith*, 572 F.3d at 1352. The argument is meritless anyway. First, Dorfman asserts that "any action brought under Section 19 requires adequate pre-suit notice to the defendant, either through the filing of an administrative action or through the rule making process." Br. 26. But Dorfman had notice "through the rule making process." The TSR was promulgated in accordance with the Administrative Procedure Act and published in the Federal Register and the Code of Federal Regulations. *See, e.g.*, *Williams v. Mukasey*, 531 F.3d 1040, 1043 (9th Cir. 2008) (publication of regulations in the Federal Register "provided Petitioner with the notice that due process required"). The text of the Telemarketing Act itself likewise provided fair notice that a violation of the TSR could lead to liability under Section 19 since, as discussed above, the statute plainly states that a violation of the TSR "shall be treated" as a violation of a rule under the FTC Act regarding unfair or deceptive acts or practices. 15 U.S.C. § 6102(c)(1).

Second, Dorfman contends that he did not receive adequate notice of the proceedings against him. Br. 27-28. He appears to be complaining about the district court's issuance of an *ex parte* TRO, but that issue is now moot because the TRO has been superseded by the preliminary injunction. In any event, the district court entered the *ex parte* TRO in accordance with Rule 65, based on the FTC's showing that Dorfman would likely destroy evidence and dispose of or conceal

assets if given advance notice of the proceeding. ECF No. 12 at 41-42. To the extent that he is complaining about the preliminary injunction proceeding, Dorfman not only had notice, but he actively participated in the proceeding, submitting briefs, cross-examining witnesses, and presenting his own evidence at the hearing.

### D.    Dorfman's Arguments About the Ultimate Form of Monetary Relief Are Premature.

Dorfman also raises several arguments concerning the ultimate form of monetary relief the district court may award at the end of this case. For example, he speculates that money will not be distributed to consumers but will instead be paid to the U.S. Treasury and that the district court may improperly impose joint-and-several liability. Br. 26, 35-36. All of these hypothetical arguments are premature. If and when Dorfman is found liable and is subject to a judgment, the parties will have an opportunity to address the precise form of any relief, the district court will have an opportunity to craft an appropriate judgment, and Dorfman will have an opportunity to appeal from the final judgment.

Many of Dorfman's statements concerning relief, however, are incorrect or require clarification. First, contrary to Dorfman's assertion, the FTC intends to distribute all of the money it recovers to victims (except for costs associated with fund administration). In fact, we anticipate that any judgment will require such distribution. In some past cases, distribution to consumers has been impractical or

infeasible—*e.g.*, where victims cannot be identified or the costs of distribution exceed the amounts recovered. In those cases, the FTC's past practice has been to deposit undistributed funds in the Treasury, although the amounts paid to the Treasury are minuscule compared to the amounts that the FTC has returned to consumers.[10] In *Liu*, the Supreme Court left open the question of whether this kind of fallback disgorgement to the Treasury was consistent with principles of equity. 140 S. Ct. at 1947-48. This Court need not deal with that issue in an advisory opinion now. If any problems arise in distributing funds to Dorfman's victims, the district court can address the issue.

Dorfman also wrongly asserts that the FTC is seeking a "double recovery" because it entered into a stipulated order with his co-defendant, Candida Girouard, that includes a monetary judgment for $196,466,443.[11] But Dorfman neglects to mention that the stipulated order provides that this entire amount is suspended so long as Girouard provides truthful information about her finances. ECF No. 449 at 12. The FTC has recovered no money from Girouard and does not expect to, but if

---

[10] From fiscal years 2017 to 2021, the FTC returned approximately $1.4 billion directly to consumers and paid only $29.8 million to the Treasury. *See* FTC, *FTC Refunds to Consumers*, Fiscal Year 2017 to 2021, https://public.tableau.com/ profile/federal.trade.commission#!/vizhome/Refunds_15797958402020/Refundsby Date.

[11] Girouard was an officer of Dorfman's companies who was added as a co-defendant when the FTC filed its first amended complaint.

it does, that recovery will be credited against any amounts that Dorfman and his businesses owe. There will be no double recovery.

### E. The District Court Was Not Required To Make the FTC File a New Preliminary Injunction Motion.

Dorfman also suggests in his Introduction and Statement of the Case (but not in the Argument) that since the preliminary injunction was originally issued only under Section 13(b), the district court was obligated to vacate the injunction and require the FTC to file a new motion relying on Section 19 as well. Even if the argument is preserved, *see* Fed. R. App. P. 28(a)(8), it is wrong. Dorfman's proposed course of action would have given him an opportunity between orders to conceal his assets, eviscerating a renewed asset freeze. The district court properly rejected this outcome, holding that it was "not … necessary for the Commission to file a renewed motion for preliminary injunction as nothing will change." ECF No. 446 at 7-8. The court had ample discretion to maintain the existing preliminary injunction based on its prior finding that the FTC was likely to prevail on the TSR claims, rather than engaging in an empty formality with a preordained result.

### F. Dorfman's Argument That the District Court Erred in Finding a Likely TSR Violation Is Waived, Barred by Law of the Case, and Wrong.

Finally, Dorfman argues (Br. 37-39) that the district court erred in its original preliminary injunction order when it found that "the FTC is likely to succeed on the merits of its TSR claim." ECF No. 139 at 20. This argument is

waived because Dorfman did not raise it in his district court briefing on the motion to dissolve. *See, e.g.*, *Smith*, 572 F.3d at 1352. It is also squarely barred by the law-of-the-case doctrine. This Court has repeatedly held that "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997).[12] Since Dorfman could have challenged the district court's likelihood of success determination in his prior appeal but chose not to, it is too late for him to raise that challenge now.[13]

In any event, Dorfman's claim of error is wrong. He argues that the TSR applies only to calls "initiated" by telemarketers, and that the district court did not find that Dorfman's telemarketers initiated any calls. Br. at 38. But it did.[14] The

---

[12] *Accord United States v. Stein*, 964 F.3d 1313, 1324-25 (11th Cir. 2020); *United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010).

[13] None of the three narrow exceptions to the law-of-the-case doctrine (see n.8 *supra*) applies here.

[14] Dorfman is also wrong that the TSR categorically exempts all calls initiated by a customer. The TSR generally applies to both outbound telemarketing (calls initiated by the telemarketer) and inbound telemarketing (calls initiated by a customer). This is clear from the rule's definition of "telemarketer" as "any person who, in connection with telemarketing, initiates *or receives* telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(ff) (emphasis added). Dorfman cites exceptions for certain types of calls "initiated by a customer," *id.* § 310.6(b)(4)-(6),

30

district court explained that the scam worked by luring consumers to enter their information on a lead generation website, which forwarded the information to Dorfman's company, HBO. ECF No. 139 at 6. The court found that "[a]fter receiving a lead, an HBO salesperson would contact the potential customer." *Id*. In other words, the telemarketer called the customer. Dorfman argues that the salespeople did not "initiate" these calls because they were responding to information provided by the customer. Br. 39. But in adopting the TSR, the Commission made clear that "[a] telemarketer initiates a telephone call by causing the called consumer's telephone to ring." TSR Statement of Basis and Purpose, 68 Fed. Reg. 4580, 4643 (2003). And in ordinary English, "initiate" means "to cause the beginning of (something): to start or begin (something)." *Initiate*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/initiate. The person who places a call is the one who initiates it.

## II.    DORFMAN'S ARGUMENTS ABOUT THE RECEIVERSHIP ARE OUTSIDE THE SCOPE OF THE COURT'S JURISDICTION, WAIVED, AND WRONG.

Although Dorfman challenges the preliminary injunction as a whole, he focuses mostly on the asset freeze. Insofar as Dorfman is challenging the district court's authority to impose a receivership, his argument fails for the same reasons

---

but these merely confirm the general rule that calls initiated by a customer *are* subject to the TSR—otherwise there would be no need for exceptions. But in this case, no evidence was presented at the preliminary injunction hearing of any calls initiated by customers.

discussed above with respect to the asset freeze. As discussed above, Dorfman concedes that preliminary equitable relief is proper where the FTC seeks equitable monetary relief under Section 19. Br. 21. Just as the district court has authority to freeze a defendant's assets to ensure they are available for consumer redress, it has authority to appoint a receiver to collect the corporate defendants' assets and safeguard them so that they are available for the same purpose. Here, the district court found that a receivership was necessary to "preserve assets" and "identify the victims of [Dorfman's] scheme," as well as to "prevent further fraudulent practices." ECF No. 139 at 24. Maintaining the receivership for these purposes was well within the district court's discretion.

Dorfman's main argument about the receivership is that it has supposedly deprived the corporate defendants of representation. This argument has nothing to do with whether the district court had the authority to impose a receivership, and is thus outside the scope of this court's appellate jurisdiction, which is limited to matters "directly related" to the denial of the motion to dissolve. *Kaimowitz*, 122 F.3d at 43. Even if the Court could consider the issue, the argument is waived because Dorfman did not raise it before the district court on his motion to dissolve.

In any event, Dorfman's assertion (Br. 28) that the corporate defendants "have never been represented by counsel" is wrong and omits relevant background. Early on in the case, the FTC and the Receiver both made clear that they would not

object to Dorfman's counsel representing the defendants; Dorfman's counsel declined to do so. ECF No. 363 at 6. The Receiver initially did not offer a defense based on his conclusion that the businesses could not be legally operated and that spending money on a defense would merely drain assets available for victim redress, but he offered to let Dorfman assert defenses on behalf of the corporate entities at his own expense. ECF No. 364 at 3-4. Roughly 20 months into the litigation, the clerk (on the FTC's application) entered a default against the corporate defendants. ECF Nos. 356, 359. At that point, Dorfman moved to set aside the default and to compel the Receiver to answer the complaint on behalf of the corporate entities. ECF Nos. 358, 360. The district court granted those motions, and the Receiver proceeded to file an answer. ECF Nos. 365, 373.[15] Thus the corporate defendants are represented by counsel in the manner that Dorfman himself requested; Dorfman has the option to retain different counsel but has not done so. If Dorfman has complaints about the way in which the Receiver has responded to the FTC's allegations or has otherwise conducted his duties, such concerns are properly raised in the district court.

---

[15] The Receiver has also filed an appearance in this appeal.

## III.    THE PRELIMINARY CONDUCT RELIEF MUST BE AFFIRMED.

Although Dorfman argues that *AMG* required the district court to "dissolve the injunction" in its entirety (Br. 15), his arguments relate solely to the asset freeze and receivership provisions of the preliminary injunction. He does not offer any argument that *AMG* requires dissolution of the injunction's conduct restrictions. Nor could he. *AMG* related solely to monetary relief and did not alter the district court's authority to order preliminary or permanent conduct relief under Section 13(b). This Court recognized as much in *FTC v. On Point Capital Partners, LLC*, 17 F.4th 1066 (11th Cir. 2021), where it reversed an asset freeze issued under Section 13(b) in light of *AMG* (there was no Section 19 claim), but affirmed "the parts of the preliminary injunction enjoining [defendants] from engaging in deceptive practices or releasing consumer information." *Id*. at 1084. Those are precisely the kinds of conduct restrictions the district court imposed here. Just as in *On Point*, the conduct restrictions must be affirmed.

Dorfman also argues in passing that preliminary injunctive relief under Section 13(b) is limited to 20 days, unless the Commission also commences an administrative proceeding against the defendant. Br. 20. The argument is waived here because Dorfman did not raise it in his motion papers, but even if it were preserved, the argument is contrary to the law of this Circuit and the law of the case. *U.S. Oil & Gas* held that the FTC is not required to file an administrative

34

complaint when it seeks a permanent injunction and that the district court may issue a preliminary injunction ancillary to the request for permanent relief. 748 F.2d at 1434-35. And in *Simple Health II*, the Court rejected the very same argument Dorman is making now, holding that *U.S. Oil & Gas* was binding precedent. 792 F. App'x at 762.

Nothing in *AMG* undermines these holdings. To the contrary, the Supreme Court explained that "the Commission may use § 13(b) to obtain injunctive relief while administrative proceedings are foreseen or in progress, *or* when it seeks only injunctive relief." 141 S. Ct. at 1349 (emphasis added). The disjunctive "or" indicates that injunctive relief may be proper under Section 13(b) even when administrative proceedings are not "foreseen or in progress"—*i.e.*, that the FTC may file a standalone complaint for injunctive relief. And as noted above, this Court affirmed preliminary conduct restrictions in *On Point Global*, even though the FTC filed no administrative proceeding in that case either.

## CONCLUSION

The district court's order denying Dorfman's motion to dissolve the preliminary injunction should be affirmed.

Respectfully submitted,

JAMES REILLY DOLAN
    *Acting General Counsel*

JOEL MARCUS
    *Deputy General Counsel*

January 26, 2022                    /s/ Matthew M. Hoffman
                                   MATTHEW M. HOFFMAN
                                       *Attorney*

                                   FEDERAL TRADE COMMISSION
                                   600 Pennsylvania Avenue, N.W.
                                   Washington, D.C. 20580
                                   (202) 326-3097
                                   mhoffman@ftc.gov

                                   Of Counsel:
                                   ELIZABETH C. SCOTT
                                   JOANNIE WEI
                                   PURBA MUKERJEE
                                       *Attorneys*

                                   FEDERAL TRADE COMMISSION
                                   Chicago, Illinois 60604

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with the volume limitations of

Fed. R. App. P. 32(a)(7)(B) because it contains 8,656 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and that it complies with

the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style

requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft

Word for Microsoft 365 MSO in 14 point Times New Roman type.


January 26, 2022                        /s/ Matthew M. Hoffman
                                        Matthew M. Hoffman